## FARMERS NATIONAL GRAIN CORPORATION v. YOUNG, and four other cases.

Nos. 28776-28780. March 26, 1940.

Rehearing Denied May 14, 1940.

*102 P. 2d 180.*

Ernest F. Smith of Enid, for plaintiff in error.

Harry C. Kirkendall, of Enid, for defendant in error.

OSBORN, J. This action was instituted in the district court of Garfield county by C. F. Young, plaintiff, against Farmers National Grain Corporation, a corporation, defendant. The plaintiff in his petition alleges that the defendant entered into a contract and agreement with the Home Builders Shipping Association, hereinafter referred to as the Elevator, whereby the Elevator became and was the purchasing agent of the defendant, and that as such agent the Elevator purchased from the plaintiff 630 bushels and 30 pounds of wheat at the agreed price of 91 cents per bushel. Plaintiff's petition further alleged the delivery of the wheat to the Elevator and prayed for the sum of $573.60 as the value thereof. Attached to plaintiff's petition was a copy of the contract and agreement entered into by and between the defendant and the Elevator. Defendant in its answer admitted having entered into the contract with the Elevator as alleged in plaintiff's petition, but specifically denied that the Elevator was defendant's agent in the purchase of wheat and specifically denied that the

contract was sufficient to designate and appoint the Elevator the agent of defendant for any purpose whatsoever. The cause was tried to the court upon an agreed statement of facts and resulted in a verdict in favor of plaintiff, from which the defendant has appealed to this court. The parties will be referred to as they appeared in the trial court.

The facts as stipulated by the parties are as follows:

"Comes now plaintiff, by and through his attorney of record, Harry C. Kirkendall, and the defendant by and through its attorney of record, Ernest F. Smith, and hereby, in open court, waive a trial by jury, consent to the trial of said cause to the court, and agree that the issues herein submitted to the court for trial and determination upon the following agreed statement of facts:

"First. That plaintiff is a farmer living in the vicinity of Aline, Oklahoma, and is engaged in the farming business, and of raising wheat for sale.

"Second. That defendant, Farmers National Grain Corporation, is a co-operative corporation organized and existing under and by virtue of the laws of the state of Delaware; is licensed to do business in the state of Oklahoma and has and maintains a branch office at Enid, Garfield county, Okla.

"Third. That within the powers of said corporation there is included the power to enter into, make, perform and carry out contracts of any kind for any lawful purpose without limit as to amount, with any person, firm or association, corporation, municipality, county, state, territory, government or agency thereof; to borrow money and to draw, make, accept, endorse, transfer, assign, execute and issue bonds, debentures, promissory notes, bills of exchange, warrants and other evidence of indebtedness without limit as to amount, and for the security of any of its obligations to convey, transfer and assign, deliver, mortgage and/or pledge all or any part of the property or assets at any time owned or held by said corporation; to loan its funds with or without collateral or other security therefor.

"Fourth. That Home Builders Shipping Association is a corporation duly organized and existing under and by virtue of the laws of the state of Oklahoma, owning and maintaining a grain elevator in the town of Aline, Oklahoma, and engaged in the business of handling, buying and selling wheat and other grain, however, not being a licensed or bonded public warehouse, nor in anywise conducting or assuming to conduct a licensed or bonded public warehouse business, which facts both parties to this action, at all times, well knew.

"Fifth. That on or about the 18th day of May, 1934, the defendant, Farmers National Grain Corporation, entered into a written contract and agreement with said Home Builders Shipping Association, a corporation, of Aline, Oklahoma, as aforesaid, a true and correct copy of said contract being attached as 'Exhibit A' of plaintiff's petition, and incorporated herein. That plaintiff had knowledge of said contract and knew that said Home Builders Shipping Association drew drafts in payment for wheat purchased by it and knew that said Home Builders Shipping Association had no funds of its own with which to finance its wheat purchases.

"Sixth. That the contract referred to in the paragraph next preceding was in force and effect between the parties thereto, from May 18, 1934, until the close of the day of March 26, 1936.

"Seventh. That on or about the 25th day of June, 1935, plaintiff delivered to Home Builders Shipping Association at Aline, Oklahoma, wheat in the amount of Six Hundred and Thirty Bushels and Twenty pounds (630 Bu. and 30 lbs.), on which date the market price of wheat at Aline, was Ninety-one cents (91c) per bushel, which said wheat was received by said Home Builders Shipping Association, by Sid Phillips, as its acting manager. That said transaction was not reported to defendant nor did the defendant have any knowledge or information concerning the same until after March 26, 1936. That according to a custom in said community existing between farmers raising and delivering wheat, and the Home Builders Shipping Association, in the event the farmer was not satisfied with the price of wheat at the time of delivery and did not choose to demand payment at the price current on day of delivery that he would thereafter, and upon demand, be paid the

price for the wheat that said Home Builders Shipping Association was paying on the day the farmer chose to make demand. Such custom was followed in the instant case and it was understood between plaintiff and Home Builders Shipping Association, that plaintiff might choose a day and time thereafter to determine the market price which said plaintiff should receive from said Home Builders Shipping Association, for said wheat, said market price to be determined by the market on the day said plaintiff should choose. That defendant had no knowledge of said custom, nor did it participate therein.

"Eighth. That said plaintiff did not prior to the close of the day of March 26, 1936, choose a market day or make demand for his money or draft nor was any draft drawn by said Home Builders Shipping Association or Sid Phillips, its manager, on Farmers National Grain Corporation, the defendant herein, in payment for said wheat.

"Ninth. That on or about the close of the day of March 26, 1936, said Home Builders Shipping Association, acknowledged its insolvency, closed its doors, surrendered and terminated its said contract with defendant.

"Tenth. That subsequent to the termination of said contract as herein stipulated, plaintiff first made demand upon Home Builders Shipping Association and then upon defendant, Farmers National Grain Corporation, for payment for said wheat at the price of Ninety-one cents (91c) per bushel, said price being the current market price of wheat at the close of said day of March 26, 1936. Payment was refused by said defendant.

"Eleventh. That said Home Builders Shipping Association had no funds or operating capital of its own during the term of the contract with which to finance its purchases of wheat; that its wheat purchases were financed by the method of drawing drafts on Farmers National Grain Corporation in accordance with the terms, directions and conditions of the contract herein referred to.

"Twelfth. It is stipulated that the contract attached to plaintiff's petition be submitted to the court for interpretation and construction; and if in the court's opinion said contract has the effect of constituting the appointment of said Home Builders Shipping Association as agent of defendant for the purpose of doing the things herein stipulated as having been done by said Home Builders Shipping Association, then and in that event the defendant would be liable for the amount of wheat so sold and delivered to the Home Builders Shipping Association as alleged in said petition; but if in the court's opinion said written contract does not constitute the appointment of said Home Builders Shipping Association as agent of the defendant for the purpose of the doing of the things herein stipulated as having been done by said Home Builders Shipping Association, then and in that event the defendant herein is not and would not be liable to the plaintiff in any amount."

The contract entered into between Home Builders and Farmers National Grain Corporation, reads:

"This Agreement, made and entered into at Aline, Oklahoma, this 18th day of May, 1934, by and between Farmers National Grain Corporation, a Delaware Corporation, (hereinafter referred to as Farmers National) and Home Builders Shipping Association, a corporation, (hereinafter referred to as Elevator):

"Witnesseth:

"Whereas, Elevator is a stockholder in Oklahoma Grain Growers Association, a corporation engaged in cooperative grain marketing; and

"Whereas, said Oklahoma Grain Growers Association is a stockholder in Farmers National Grain Corporation, and, under an existing contract, Farmers National handles the grain of the stockholders of said Oklahoma Grain Growers Association; and,

"Whereas, Elevator desires that Farmers National finance its grain buying operations by purchasing and paying for all grain delivered and sold to Elevator by growers at once upon such delivery and sale;

"Now, therefore, in consideration of these premises, it is mutually covenanted and agreed as follows:

"1. The Elevator agrees that it will buy grain only in the manner herein set forth during the term of this agreement.

"2. Farmers National agrees that it will submit bids to Elevator daily, or at such frequency as may be agreed upon between Farmers National and Elevator. Such bids shall stipulate the price at which Farmers National will purchase from Elevator and accept net bushels of grain of a given kind and grade delivered to and purchased by Elevator, and shall specify the period during which such bids shall be effective. Elevator agrees to base its buying price upon such bids, but that, under no condition, will such buying price be in excess of such bids.

"3. Elevator agrees forthwith upon purchase of any grain to sell, transfer and deliver same to Farmers National. To this end Elevator shall at the time of purchase draw a draft on Farmers National in favor of the grower for sums due grower for net bushels of grain actually sold and delivered to Elevator. Elevator agrees that it will not draw any drafts on Farmers National except for grain actually delivered and sold to it and then only for the amount due grower for net bushels of grain so actually sold and delivered to the Elevator, Farmers National agrees to honor all drafts drawn upon it by Elevator as above provided. Immediately upon the making of such drafts by Elevator, title to the grain covered thereby shall pass to and vest in Farmers National, free from any claims or demands of Elevator and the latter warrants that the title to all such grain shall vest in Farmers National free from any encumbrances or claims.

"4. Elevator agrees that it will handle and ship all grain belonging to Farmers National in accordance with the instructions of Farmers National without charge for such service. Elevator shall have the right, however, in the absence of shipping instructions, to ship carloads of any kind and grade of grain as accumulated, and to bill such grain to Farmers National at the market to which Farmers National ordinarily orders such grain shipped from such Elevator.

"5. Elevator agrees that it will not accept any grain whatsoever unless such grain has been purchased and paid for by draft drawn on Farmers National, it being understood, however, that Elevator may accept grain for storage if the Elevator has been Licensed and Bonded as a public warehouse under applicable State and Federal laws. Elevator agrees that it will, at all times, maintain an amount of grain in store in its own Elevator equal to its storage liability. * * *

"8. Elevator agrees to report daily to Farmers National by regular mail, postage paid, on forms furnished by Farmers National, covering all purchases of grain and grain received for storage. Such reports shall show, in every instance where grain is received for storage, the name of the storer, the kind, grade and amount of such grain and the storage rate. Such reports shall show, in every instance, where grain is purchased, the kinds, grades and net amounts of grain so purchased, whether it was from storage or direct delivery, the bid price of Farmers National, and the net price at which grain was purchased by Elevator, duplicate copies of all drafts drawn by Elevator against Farmers National, and the stubs thereto, and duplicate copies of all scale tickets shall accompany such daily reports. At its own option Farmers National may in any case delay honoring drafts until duplicate copies with details of transactions covered by the drafts have been received. Elevator agrees additionally to report to Farmers National, by Telegraph, at Farmers National's expense, in all cases where the purchase transactions on any one kind of grain during the day are in excess of five hundred bushels, giving the necessary details of such purchase transactions, Farmers National agrees to compile these daily reports in a manner to show the amounts due Elevator (being the difference between Farmers National's bid price and the price paid by Elevator, which difference will include storage charges earned by Elevator, if any, and deducted in settlement with the grower) and to forward such compiled reports, with a remittance to cover such amounts due Elevator, within ten days after the close of each month. Farmers National shall have the right, however, to deduct from the amounts due Elevator any amount which Farmers National may have been required to pay in freight upon dockage, or any amount which Farmers National may lose because of failure of title to grains delivered by Elevator, or because of over-grading of grain by Elevator, or because of shortage in delivery weights; terminal weights and grades to be the determining factor as to weights and grades delivered. Farmers National agrees to pay Elevator for any overage in weights and grades in its de-

liveries to Farmers National based upon terminal weights and grades, and the premium value, if any, of the dockage contained in such deliveries. * * *"

It is noted from the foregoing contract between the Farmers National (defendant herein) and the Elevator that the Elevator agreed to buy grain only in the manner set forth in the contract; that the defendant would submit bids daily, or at such frequency as might be agreed, stipulating the price which the defendant would accept the grain bought by the Elevator and specify the period during which such bids would be effective; that the Elevator base its buying price upon such bids and under no circumstances would pay prices in excess of the defendant's bids; that the Elevator should draw drafts upon the defendant for sums due the grower for the grain so purchased and that the defendant would honor all such drafts. That immediately upon the drawing of such drafts, title to to said grain should vest in the defendant free and clear of all encumbrances. The contract further provided that the Elevator should handle and ship all grain in accordance with shipping instructions of defendant, without charge, but in the absence of shipping instructions might ship carloads of any kind of grain as accumulated and bill defendant at the market to which such grain is ordinarily shipped; that the Elevator will accept no grain whatsoever except that purchased and paid for by draft drawn upon the defendant, except that wheat might be accepted for storage if the Elevator has been licensed and bonded as a public warehouse; that the Elevator should make daily reports to defendant upon forms furnished by defendant covering all grain purchased or stored; that such reports should show the kinds, grades, and amounts of grain purchased, whether it was for storage or direct delivery, the bid price of defendant and the net price paid; that the amounts due the Elevator should be the difference between the bid price of defendant and the amount actually paid by the Elevator, which difference should include storage, if any.

The defendant contends that the foregoing is not sufficient to create the relationship of principal and agent, and that if it can be so construed, the act of the Elevator in accepting the wheat of plaintiff in the manner stipulated was beyond the scope of the agent's authority.

Agency is defined in American Law Institute, Restatement of the Law of Agency, sec. 1, as follows:

"(1) Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

"(2) The one for whom action is to be taken is the principal.

"(3) The one who is to act is the agent."

Comment on subsection (1):

"a. The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.

"b. It is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it. On the other hand, there is not necessarily an agency relationship because the parties to a transaction say that there is, or contract that the relationship shall exist, or believe it does exist. Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary. * * *"

Whether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. If an act done by one person in behalf of another is in its essential nature one of agency, the former is the agent of the latter, notwithstanding

he is not so called. 2 Am. Jur. § 24.

We do not find it necessary to analyze in great detail the various terms and conditions of the contract herein involved. We direct attention to the element of control by the defendant over the transactions of the Elevator; the method of compensating the Elevator for handling the grain purchased, and the fact that under the terms of the contract the Elevator was prohibited from purchasing grain on its own account or on account of anyone except defendant company. After due consideration of these elements we are driven to the conclusion that the parties created between themselves the relationship of principal and agent and that plaintiff, who knew of such relationship, was entitled to rely thereon unless he had notice that the Elevator in entering into the contract involved herein was acting in excess of its authority as such agent. See Consolidated Flour Mills v. Roberts, 123 Okla. 101, 252 P. 29; American Law Institute, Restatement of the Law of Agency, sec. 36; 2 C.J.S. 1347.

Defendant argues that under the terms of the contract the Elevator was required to draw a draft upon it "at the time of purchase" in favor of the grower for the net bushels of grain actually sold and delivered, and that a purchase of grain under any other condition was outside of the scope of the authority of the elevator. On the question of the notice of such condition to the plaintiff herein, we advert again to the stipulation wherein it is stipulated "that plaintiff had knowledge of said contract and knew that said Home Builders Shipping Association drew drafts in payment for said wheat purchased by it, and knew that said Home Builders Shipping Association had no funds of its own with which to finance its said purchases."

From the foregoing stipulation it is not possible for us to determine the extent of plaintiff's knowledge of the contract between the agent and principal. To assume that plaintiff had sufficient knowledge to put him upon notice of the limitations placed upon the authority of the agent, or to assume the lack of such knowledge on the part of the plaintiff, would necessitate the placing of a construction upon the language of the stipulation which might be entirely contra to the actual facts.

It was stipulated that the handling of plaintiff's grain by the Elevator was according to an established custom, and while defendant was not aware of the custom, it appears that to a third person this was within the apparent scope of the agent's authority.

In 2 Am. Jur. p. 271, § 348, it is said:

"Sec. 348. Apparent Authority. Violation of Instructions. — If an act done by an agent is within the apparent scope of the authority with which he has been clothed, it matters not that it is directly contrary to the instructions of the principal; the latter will, nevertheless, be liable, unless the third person with whom the agent dealt knew that he was exceeding his authority or violating instructions."

From the foregoing it will be seen that if the plaintiff had knowledge of the terms of the contract he would be bound by the limitations thereof, and the defendant would not be liable to him for the acts of his agent who was exceeding his authority thereunder. Hartford Fire Ins. Co. v. McAvoy, 177 Okla. 60, 57 P. 2d 242. If, however, the plaintiff merely knew of the existence of the contract, and knew nothing of the express limitations upon the agent's authority, he had a right to rely upon the apparent authority of the agent to conduct his principal's business according to an established custom, and the defendant would be liable. A. J. McMahan & Co. v. Hibbard, 182 Okla. 503, 78 P. 2d 409.

We conclude, as did the trial court, that the relationship of agency was duly established. In view of the stipulation that the transaction was conducted between the parties according to an established custom, and in view of the further stipulation that plaintiff had knowledge of said contract, and the trial court rendered judgment in favor of plaintiff, we might assume that his construction of that portion of the stipulation was to

the effect that plaintiff merely knew of the existence of the contract. On a further trial of this case, the stipulation can be clarified either by agreement or by the introduction of evidence in that respect.

Causes No. 28777, No. 28778, No.28779, and No. 28780 were by order of this court consolidated with this cause, and the questions involved being identical, the judgments therein are reversed and the causes remanded in accordance with the views hereinabove expressed.

RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J., and WELCH, V. C. J., dissent.