**Alvin CURTIS, Appellant,**

v.

**CIA MACHINERY, INC., a Foreign Corporation, Duane Stewart, and Reed Tool Company, a Foreign Corporation, Appellees.**

No. 49386.

Court of Appeals of Oklahoma, Division No. 2.

July 26, 1977.

Rehearing Denied Aug. 17, 1977.

Certiorari to Court of Appeals Denied Oct. 19, 1977.

Released for Publication by Order of Court of Appeals Oct. 20, 1977.

Berry, Nesbitt & Berry, Oklahoma City, for appellant.

Paul F. Fernald, Keller & Fernald, Oklahoma City, for appellees.

BRIGHTMIRE, Presiding Judge.

Assailed here is the dismissal of plaintiff's action for damages against a nonresident seller of an allegedly defective drilling rig. The order was grounded on the conclusion that there was shown to be a lack of relevant "minimum contact" by defendant seller, CIA Machinery, Inc., which would allow the courts of this state to exercise in

personam jurisdiction over it. We hold there was sufficient contact and reverse.

## I

In March 1974 plaintiff entered into a conditional sales contract with CIA for the purchase of a Texoma model 500–30 hydraulic drilling unit. The machinery soon proved to be unsatisfactory and when other means of redress failed plaintiff filed this damage suit and caused CIA to be served in Dallas, Texas pursuant to the provisions of 12 O.S.1972 Supp. § 187—our so-called long arm statute.

CIA appeared specially and objected to the jurisdiction of the Oklahoma County District Court. In support of its plea CIA attached two affidavits of its president, Raymond Delle, stating that all negotiations leading to the sale took place in Dallas, Texas and it was there plaintiff, Alvin Curtis, had executed the March 13, 1974 contract. He further said that at no time did Oklahoma City resident, Duane Stewart, act as an authorized agent for CIA, but "was merely being a mutual friend to both Alvin Curtis and me, by suggesting to Alvin Curtis that he call me . . .." CIA also attached an affidavit of Stewart who swore he at no time has ever "been an 'authorized agent' or employee of CIA . . .."

Plaintiff countered with affidavits saying that Stewart acted as a salesman for CIA and on its behalf helped negotiate the sales contract in question receiving [as his commission] therefor the partial down payment made by plaintiff on the equipment. Plaintiff also stated that he talked with CIA officials in Dallas by telephone in furtherance of the negotiations. According to Stewart CIA officials also talked to him in Oklahoma City via telephone several times with reference to the prospective sale.

At an evidentiary hearing held January 29, 1976 plaintiff testified that Stewart was out at his house in Oklahoma City one day and during a conversation about a new drilling rig Stewart said he thought he knew where he could get one. Later Stewart contacted plaintiff and brought him some literature—a flyer on a Texoma 500 Holedigger—to which was affixed a business card displaying the name of Duane Stewart. The latter denied attaching the card to the advertising piece or writing the price information visible at the bottom thus raising the inference that CIA personnel did both and gave the exhibit to Stewart for submission to plaintiff in Oklahoma. In discussing the matter Stewart told Curtis that the rig was in Delle's yard in Dallas where it could be seen and inspected. The two men discussed CIA's proposal and "made the deal there" in plaintiff's yard which, among other things, incorporated Stewart's suggestion of using plaintiff's Ford rig as a trade-in. Stewart suggested further that he and plaintiff go to Dallas so plaintiff could see the equipment and talk with Delle. Before going, however, plaintiff talked to Delle on the telephone and apparently received confirmational approval of the preliminary negotiations because he did go on to Dallas and close the deal he had made through Stewart—an agreement that included the acceptance by CIA of plaintiff's Ford rig as a part of the down payment on the new rig with the stipulation that it be transferred to Stewart in Oklahoma City as a part of the latter's sales commission. And it was.

CIA's president testified he knew Stewart, had talked to him about the rig in question being for sale, and, when the sale was consummated, an invoice was prepared showing Stewart was to get "credit for it." The witness said also that CIA later paid the salesman an additional $3,500.

## II

Did the trial court err in dismissing the Texas corporation? We think he did. The wording of our long arm statute is such as to make manifest a legislative intent to extend it to the outermost permissible limits of federal due process.[1] The

---

1. Title 12 O.S.1972 Supp. § 187 reads in part: "(a) Any person, firm, or corporation . . . who does . . . any of the acts hereinafter enumerated, whether in person or through another, submits himself . . . to the jurisdiction of the courts of this State . . . .:

United States Supreme Court has concluded that a state may constitutionally exercise in personam jurisdiction over nonresidents so long as the prospective defendant has made certain "minimum contacts" within the territory of the forum. Although the phrase "minimum contacts" is not definable with precision the intercourse contemplated must be of such a nature that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the authority of these cases the Oklahoma Supreme Court has demonstrated a willingness to enforce the legislative policy we mentioned earlier. *Gregory v. Grove*, Okl., 547 P.2d 381 (1976)—a case in which it was held that a nonresident making "a telephone call and writing some five letters to" a state resident were sufficient contacts to satisfy the requirements of both due process and the long arm statute.

Here we are of the opinion that plaintiff has shown CIA's contact in Oklahoma exceeded the minimum necessary to invoke the jurisdiction of its state courts.

 An "agency" relationship may arise under certain circumstances even where the parties may not have intended to create one. In its essential nature the relationship results from the express or implied consent of one person for another to act on his behalf with regard to some transaction, and if the latter performs the contemplated act he does so as the agent of the former regardless of what he is called. *Farmers Nat'l Grain Corp. v. Young*, 187 Okl. 298, 102 P.2d 180 (1940). The relationship may arise from a single transaction. *Benham v. Selected Inv. Corp.*, Okl., 313 P.2d 489 (1957).

Whether Stewart was formally appointed by CIA as an "authorized agent" is not decisive. All that is necessary is that there be evidence that Stewart was engaged in trying to sell the drill rig for CIA with its knowledge and consent, express or implied. If he was then under *Benham* and *Farmers Nat'l Grain Corp.* he was acting as a special commission agent for CIA with regard to the holedigger in question. And evidence there is upon which to base such a finding though circumstantial it might be. CIA made an agreement with Stewart to pay him a commission if the sale was consummated. It gave Stewart advertising literature on the holedigger for presentation to plaintiff in Oklahoma obviously for the purpose of furthering Stewart's sales efforts. The "deal" proposed by Stewart in Oklahoma appears to be substantially the one accepted by CIA, indicating that Stewart had received prior authority to make it. Finally the invoice prepared by CIA bore the name of Stewart which CIA's president said was intended to designate him as the person entitled to credit for making the sale. Under these circumstances we believe neither fair play nor substantial justice is affronted by having CIA respond in Oklahoma to charges that it supplied plaintiff with a defective product.

This factual situation is distinguishable from those in cases cited by CIA, namely *Architectural Bldg. Components Corp. v. Comfort*, Okl., 528 P.2d 307 (1974); *Crescent Corp. v. Martin*, Okl., 443 P.2d 111 (1968).

The order of dismissal is vacated and the cause remanded for further proceedings against CIA.

BACON and NEPTUNE, JJ., concur.

(1) the transaction of any business within this STATE;

(2) the commission of any act within this State . . . .."