John Whitney HAWORTH, Appellant,

v.

CENTRAL NATIONAL BANK OF OKLAHOMA CITY and Tom Collins, Appellees.

No. 66234.

Supreme Court of Oklahoma.

Feb. 7, 1989.

David Bernstein, Norman, for appellant.

Robert D. Looney, Jr., Oklahoma City, E. Bay Mitchell, III, Enid, for appellee, Central National Bank.

Jack S. Dawson, Oklahoma City, for appellee, Tom Collins.

KAUGER, Justice.

The dispositive question of first impression is whether a municipal police officer qualifies as a "government authority" under the Financial Privacy Act (Act), 6 O.S. 1981 § 2201–2204 thus triggering these provisions. Section 2203 of the Act prohibits the release by a financial institution of any information to a "government authori-

ty" unless the institution has either the written consent of the customer for the specific record requested, or it has been served with a subpoena for the specific record pursuant to § 2204. We find that a municipal police officer, who solicits information from a financial institution in connection with a criminal investigation, acts as a state agent and is a "government authority" within the meaning of the Act.

## FACTS

In January 1984, a supervisory employee of Lawrence Photo reported the theft of $3,100.00 to the Oklahoma City Police Department. Police detective Jerry Flowers (detective) was assigned to conduct a criminal investigation. Several Lawrence Photo employees, including the appellant, John Whitney Haworth (Haworth), were interviewed. During the course of the investigation, the detective asked Haworth where he banked. Haworth told him Central National Bank of Oklahoma City (appellee/bank). The police officer alleged that the employee gave him permission to check his bank records—Haworth denies it. Nevertheless, the detective telephoned the bank and spoke with a bank employee, Tom Collins (Collins-appellee). After advising Collins that he was conducting a criminal investigation, the detective inquired if Haworth had made any large deposits. Collins responded that Haworth had deposited a check for approximately $300.00 with a notation that it was for the purchase of camera equipment. Further investigation revealed that the equipment came from Lawrence Photo, and that the check had been deposited a month before the $3,100.00 theft under investigation. Although Haworth insisted that he had charged the equipment to his employee account, no record of the transaction could be found.

As the result of the apparently unrelated investigation, Haworth was fired and charged with embezzlement under 21 O.S.

1981 § 1456 [1] based on the theory Haworth had appropriated property from his employer for his own use. Subsequently, when Lawrence Photo remodeled its store, several receipts, including the charge slip to Haworth's employee account reflecting the sale of the camera equipment, were found behind the cash register. Haworth moved to suppress the evidence obtained from the bank because the information had been obtained in the absence of either his written consent or a subpeona. Lawrence Photo moved to dismiss the criminal charges on April 13, 1984. The case was dismissed on the same day, after the trial court determined that the detective had engaged in an illegal search under the Act.

Haworth filed this action on June 4, 1984, alleging that the bank and Collins had wilfully, recklessly, and wantonly disregarded his right to financial privacy in violation of the Act. On January 22, 1985, Haworth moved for partial summary judgment on the issue of actual damages. On March 19, 1985, the trial court denied Haworth's motion finding that there was a dispute concerning the amount of damages and the surrounding facts. On December 24, 1985, the bank and Collins moved for summary judgment which was granted on April 21, 1986. The Court of Appeals affirmed the trial court finding, among other things, that the bank and its employee could disclose Haworth's records to the detective because city police officers are not "government authorities" under the Act. Haworth sought certiorari, and we granted it on January 6, 1989.

## I

### A MUNICIPAL POLICE OFFICER CONDUCTING A CRIMINAL INVESTIGATION ACTS AS A STATE AGENT. THE OFFICER IS A "GOVERNMENT AUTHORITY" UNDER THE FINANCIAL PRIVACY ACT

The purpose of the Act is to "maintain the privacy and confidentiality of the

---

1. Title 21 O.S.1981 § 1456 provides:
 "If any clerk or servant of any private person or copartnership or corporation, except apprentices and persons within the age of eighteen (18) years, fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of any other person which has come into his control or care by virtue of his employment as such clerk or servant, he is guilty of embezzlement."

records of customers of financial institutions."[2] Financial institutions cannot disclose financial records to a "government authority" unless the customer has given written consent for the specific record, or if the bank has been served with a subpoena in conformity with § 2204 requesting a specific record.[3] "Government authority" is defined as "any agency, board, commission or department of the State of Oklahoma, or any officer, employee, representative, or agent thereof."[4]

On certiorari, Haworth asserts that a municipal police officer conducting a criminal investigation is a state agent. He also repeats his charge that the bank and its employee, in contravention of the Act, released information concerning his banking account without either his written consent or the issuance of a subpoena. The bank and Collins counter that the Act is inapplicable because a municipal police officer is not a "government authority".[5] (We note that the officer was in the process of investigating a state crime under 21 O.S.1981 § 1456.[6] Any resulting charges would have been lodged in the name of the state.)

In *Alva State Bank & Trust Co. v. Dayton*, 755 P.2d 635–36 (Okla.1988), the bank sought to prohibit the trial court from enforcing its discovery order compelling the bank to produce and disclose loan records of its customers. There, the defendants in

---

**2.** Title 6 O.S.1981 § 2201 provides:
"This act shall be cited as the Financial Privacy Act. Its purpose is to maintain the privacy and confidentiality of the records of customers of financial institutions."

**3.** Title 6 O.S.1981 § 2203 provides:
"A financial institution is prohibited from giving, releasing or disclosing any financial record to any government authority unless:
(a) it has written consent from the customer for the specific record requested; or
(b) it has been served with a subpoena issued pursuant to Section 4 for the specific record requested."
The discovery code provides that a party may request documents from a non-party after a showing of undue hardship in the form of a hearing before a trial court. Title 12 O.S.Supp. 1988 § 3211(C)(1) provides:
"C. 1. Upon motion of any party showing that he has a substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials and upon notice to the other parties to the action and to the person in possession, custody or control of the property involved, a court may make any order in regard to property in the possession, custody or control of a person who is not a party to the action that it could make under subsection A of this section in regard to property in the possession, custody or control of a party to the action."
See also, Adams, "Civil Discovery in Oklahoma: General Principles," 16 Tulsa L.J. 184, 202 (1980) (Recognizing the necessity of following special procedures before discovery of financial records.).

**4.** Title 6 O.S.1981 § 2202(c) provides:
"(c) 'Government authority' means any agency, board, commission or department of the State of Oklahoma, or any officer, employee, representative, or agent thereof."

**5.** The bank also argues that even if the police officer was a state agent within the meaning of the Financial Privacy Act that § 2205[1] of the Act authorized the release of information. Section 2205(c) provides that nothing in the Act "prohibits a financial institution from notifying a government authority that such institution ... has information that may be relevant to a possible violation of any statute or regulation." This argument is unpersuasive because the statute was not enacted until after the disclosure was made. The only disclosures not prohibited by the Act as it existed in January, 1984, were for releases to supervisory agencies and to other financial institutions for use in the regular course of business.[2]
Subsections (a) and (b) remain substantially the same in the 1985 revised version of § 2205 except that subsection (b) also allows information to be disclosed concerning the perfection of a security interest, a claim in bankruptcy, or in order to collect a debt owed the financial institution.
[1] Title 6 O.S.Supp.1985 § 2205(c) provides:
"Nothing in Sections 2201 through 2206 of this title prohibits a financial institution from notifying a government authority that such institution or an officer, employee or agent of such institution has information that may be relevant to a possible violation of any statute or regulation."
[2] Title 6 O.S.1981 § 2205 provides:
"(a) Nothing in this act shall prohibit the disclosure or release of any financial record or information to any supervisory agency in the exercise of its supervisory or regulatory functions with respect to a financial institution.
(b) Nothing in this act prohibits a financial institution from disclosing or releasing any financial record or information to another financial institution for the usual and regular business purposes of the latter."

**6.** See note 1, supra.

a mortgage foreclosure argued that because the litigation involved private parties, not a "government authority," the Act was inapplicable. The defendants alleged that the mortgage had been procured by fraud. In support of this contention, they attempted to compel the bank to produce records of other customers to prove a common scheme or design. These customers were not parties to the action, and the disclosure of their records were sought without their consent, without notice, and without subpeona. The *Alva* Court discussed the purposes of the Act, and the definition of "government authority". The Court found that their argument misconstrued the reality of the circumstances because the order of a "government authority" i.e., a trial judge, subjected the records to disclosure.

After finding that a district judge was a "government authority", the Court held: (1) Bank customer records are clearly confidential and bank customers have a reasonable expectation of privacy in them, (2) The Act restricts circumstances under which a bank or other financial institution may release customer records, and (3) The Act prescribes the proper, lawful, and exclusive procedure for obtaining a customer's banking records. Compliance with § 2204 of the Act requires properly issuing subpeonas, giving notice to customers, and affording them an opportunity to be heard to protect the disclosure of their records.

We must determine whether the detective, a municipal police officer, was acting as a state agent thus meeting the definition of "government authority" under the Act. Generally, if two parties agree that one is to act for the other, or the conduct of the parties is such that it demonstrates the willingness of one to act for the other, an agency relationship exists. An agency relationship may arise even if parties do not intend to create one.[7]

An essential element of an agency relationship is that the principal have some degree of control over the conduct and activities of the agent.[8] The Oklahoma statutes contain several provisions reflecting the state's direct intervention and control over law enforcement officers.

1. Title 11 O.S.1981 § 34–101 gives municipal police officers express authority to enforce the laws of Oklahoma.[9]

2. Title 70 O.S.Supp.1987 § 3311 sets forth mandatory educational requirements for any person seeking appointment as a police or peace officer.[10]

3. Title 63 O.S.1981 § 2554 provides the standards a law enforcement officer must conform to when a disabled person

---

**7.** *Farmers Nat'l Grain Corp. v. Young,* 187 Okl. 298, 102 P.2d 180, 185 (1940). Restatement (Second) of Agency § 1 Comment on Subsection (1) (1957).

**8.** *Agee v. Gant,* 412 P.2d 155, 160 (Okla.1966). See also, Restatement, note 7, § 1, supra.

**9.** Title 11 O.S.1981 § 34–101(A) provides:
"A. A municipal police officer shall at all times have the power to make or order an arrest for any offense against the laws of the State of Oklahoma or of the ordinances of the municipality. He shall have such other powers, duties and functions as may be prescribed by law or ordinance."

**10.** Title 70 O.S.Supp.1988 § 3311(D)(2) provides in pertinent part:
"D. 2. No person shall be certified as a police or peace officer in this state unless the employing agency has reported to the Council that:
a. the Oklahoma State Bureau of Investigation and the Federal Bureau of Investigation have reported that such person has no record

of a conviction of a felony or crime involving moral turpitude,
b. such person has undergone evaluation similar to the Minnesota Multiphasic Personality Inventory or its equivalent, as determined by the Council on Law Enforcement Education and Training, and
c. such person possesses a high school diploma or a GED equivalency certificate, provided this requirement shall not affect those persons who are already employed as a police or peace officer on the effective date of this section,
and the Council has determined that such person has satisfactorily completed a basic police course of not less than one hundred twenty (120) hours of accredited instruction for reserve police officers and reserve deputies and not less than three hundred (300) hours for full-time salaried police or peace officers from the Council or curriculum or course of study approved by the Council."

is encountered.[11]

4. Title 22 O.S.1981 § 37.1 cloaks an off-duty police officer with the same authority and obligations as an on-duty officer when in official uniform at a public event.[12]

5. Title 37 O.S.Supp.1985 § 569 imposes the duty to diligently enforce all provisions of the Oklahoma Alcoholic Beverage Control Act.[13]

6. Title 22 O.S.1981 § 38 provides that municipal police officers facing civil suits arising from conduct associated with an attempt to quell a riot shall be entitled to representation by the local district attorney.[14]

7. The Fire and Police Arbitration Act, 11 O.S.1981 § 51–101, *et seq.*, grants municipal police officers the right to organize, to engage in collective bargaining and be represented collectively while denying their right to strike.

8. Responsibility for management of the Police Pension and Retirement System, 11 O.S.1981 § 50–101, *et seq.*, is a state rather than a municipal function.[15]

9. Responsibility if the city becomes a "participating municipality"[16] within the meaning of the Act.

Obviously, the Legislature recognized that although police officers may be hired by a municipality, they are not merely servants and agents of the city. Police officers are appointed to act for the public at large as state functionaries.[17] If allegations arise from a police officer's investigation of criminal activity, the police officer is treated as an agent of the state.[18] The

---

11. Title 63 O.S.1981 § 2554(A) provides:

"A. A law enforcement officer shall make a diligent effort to determine whether any disabled person he finds is an epileptic or a diabetic or suffers from some other type of illness that would cause the condition. Whenever feasible, this effort shall be made before the person is charged with a crime or taken to a place of detention."

12. Title 22 O.S.1981 § 37.1 provides in pertinent part:

"An 'off-duty' law enforcement officer in official uniform in attendance at a public function, event or assemblage of people shall have the same powers and obligations as when he is 'on-duty'...."

13. Title 37 O.S.Supp.1985 § 569 provides in pertinent part:

"All sheriffs, marshals, and police officers ... shall diligently enforce all provisions of the Oklahoma Alcoholic Beverage Control Act. If any such officer ... shall fail or refuse to do or perform any duty required by the provisions of such statutes he shall be removed from office as hereinafter provided ..."

14. Title 22 O.S.1981 § 38 provides in pertinent part:

"A law enforcement officer who has no criminal action taken, pending or contemplated against him for the identical acts as hereinafter set forth shall be entitled to representation by the district attorney of his district or where the action is filed in a civil action brought against him for actions alleged to have been wrongfully committed by him while performing his official duty of endeavoring to quell a riot or to control civil disorder, ..."

15. Title 11 O.S.1981 § 50–102.1 provides:

"There is created the Oklahoma Police Pension and Retirement System which shall be a body corporate and an instrumentality of this state. The System shall be vested with the powers and duties specified in this act and such other powers as may be necessary to enable it and its officers and employees to carry out fully and effectively the purposes and intent of.this article. This System shall be the responsibility of the state and not that of the participating municipalities."

16. Title 11 O.S.Supp.1988 § 50–101(10) provides:

"'Participating municipality' means a municipality which is making contributions to the System on behalf of its officers;"

17. See, *Anderson v. Bd. of Comm'rs,* 91 Kan. 362, 137 P. 799 (1914); *Ex parte Preston,* 72 Tex.Crim. 77, 161 S.W. 115–17 (1913); 16A E. McQuillin, "The Law of Municipal Corporations," p. 64, § 45.11 (3rd ed. 1984). But see, *Branch v. Albee,* 71 Or. 188, 442 P.598, 601 (1914) and *Popper v. Broderick,* 123 Cal. 456, 56 P. 53, 55 (1899), finding that police officers are municipal officers although they conduct state business.

18. *Cashen v. Spann,* 66 N.J. 541, 334 A.2d 8, 14 (1975), *cert. denied,* 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975). See also, *Parker v. State,* 227 Md. 468, 177 A.2d 426, 428 (1962) (A police chief testifying on behalf of the state although not a named party to the lawsuit acts in the capacity of a state agent.) But see, *State v. Smith,* 36 Wis.2d 584, 153 N.W.2d 538, 543 (1967) (A municipal police officer is not a state agent as a matter of law absent some showing of authority to speak for the state or a factual

majority rule is that police officers who directly exercise the police power of the state are governmental agents.[19]

## CONCLUSION

 In his investigation of a possible embezzlement, the detective was acting as an arm of the state to guarantee the execution of state laws. A municipal police officer engaged in the investigation of criminal activity acts as a state agent, and as such, the officer constitutes a "government authority." [20] The release of information by the bank employee violated the Act.[21]

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, SIMMS, DOOLIN and ALMA WILSON, JJ., concur.

HODGES and SUMMERS, JJ., concur in result.

underpinning to support the agency relationship.).

19. *Wynkoop v. Mayor & City Council*, 159 Md. 194, 150 A. 447, 450 (1930).

20. This finding is in accord with *Nikrasch v. State*, 698 S.W.2d 443, 449 (Tex.App.1985), holding that the Federal Right to Privacy Act did not apply where a disclosure of financial records had been made to police officers because those officers were agents of the state.

21. See, *Suburban Trust Co. v. Waller*, 44 Md. App. 335, 408 A.2d 758, 766 (1979) and Gable, "A Glimpse At The Right To Financial Privacy Or 'The Bank That Talked Too Much'," 52 Okla.B.J. 1565, 1567 (1981).