**BANK OF OKLAHOMA, N.A., formerly Bank of Oklahoma, Oklahoma City, N.A., formerly Fidelity Bank, N.A., Trustee for the Oklahoma Housing Finance Agency, Appellee/Counter–Appellant,**

v.

**James E. BRISCOE, Appellant/Counter–Appellee.**

**No. 83778.**

Court of Appeals of Oklahoma, Division No. 2.

Dec. 26, 1995.

As Corrected Feb. 20, 1996.

R. Stephen Haynes, Haynes, Montgomery & Shdeed, Oklahoma City, for Appellant/Counter–Appellee.

Jon Epstein and William R. Burkett, Hall, Estill, Hardwick, Gable, Golden & Nelson, Oklahoma City, for Appellee/Counter–Appellant.

## OPINION

TAYLOR, Presiding Judge.

Defendant, James Briscoe (Briscoe), seeks review of the trial court's grant of summary judgment to Plaintiff, Bank of Oklahoma, Trustee (BOK), in this action to foreclose a mortgage on Briscoe's home. We affirm in part, reverse in part, and remand.

■ On review of a trial court's summary judgment, we must look at the record in a light most favorable to the losing party—in this case, Briscoe. See *First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 859 P.2d 502 (Okla.1993). Such review of the record here reveals the following:

In the early 1980s, the Oklahoma Housing Finance Agency (OHFA) instituted a program—the "Single Family Mortgage Revenue Bonds 1983 Series C Program II" (the 1983 Bond Program)—to help low and moderate income families purchase residential housing. With proceeds garnered from sales of single-family mortgage revenue bonds, OHFA purchased mortgages from various Oklahoma lending institutions selected by OHFA to participate in the program. BOK agreed to serve as Bond Indenture Trustee with respect to the OHFA Program, and entered into a bond indenture agreement with OHFA whereby all purchased mortgages were assigned to and held by BOK as trustee for the benefit of the bondholders.

One of the lending institutions participating in the program was National Home Financing Corporation (NHFC). In May 1984, Briscoe signed a promissory note originally payable to NHFC for $75,000. In its first paragraph, the note states:

**THIS NOTE CONTAINS PROVISIONS CALLING FOR ANNUAL INCREASES IN THE MONTHLY PAYMENTS WHICH COMMENCE ON THE SECOND ANNIVERSARY DATE OF THE DATE THE FIRST MONTHLY MORTGAGE PAYMENT ON WHICH PRINCIPAL WAS DUE AND SUCH INCREASES WILL CONTINUE EACH YEAR THEREAFTER UNTIL THIS NOTE IS PAID.**

**COMMENCING ON SUCH SECOND ANNIVERSARY THE MONTHLY PAYMENT WILL INCREASE BY 3% OF THE PREVIOUS YEAR'S MONTHLY PAYMENT AND SAME WILL INCREASE BY A LIKE PERCENTAGE ON EACH ANNUAL ANNIVERSARY THEREAFTER UNTIL PAID.**

**THE PORTION OF THE MONTHLY PAYMENT REPRESENTING AN INCREASE OVER THE INITIAL TWO YEAR'S MONTHLY PAYMENT WILL BE TREATED AS AN ADVANCE PARTIAL PAYMENT OF THE PRINCIPAL OWING ON THE NOTE AT MATURITY.**

The note also recites that the payments required during the first two years were established according to a thirty-year amortization schedule, but the annual increases meant the note would pay out in seventeen years. Briscoe submitted evidence that NHFC failed to comply in certain respects with the Truth in Lending Act, 15 U.S.C. §§ 1601 through 1667e (TLA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 through 2617 (RESPA).[1]

Further, though NHFC implemented Briscoe's principal and interest (P & I) payment increases in July 1986 (from $684.66 to $705.20) and August 1987 (to $726.36), it did not require any further P & I increases until the first half of 1991, when it notified Briscoe that his P & I payment would increase by more than twelve percent in July 1991. Considerable other evidence of NHFC's improper loan servicing also appears in the record, including a 1993 lawsuit filed by BOK against NHFC in federal court seeking damages for

---

1. For example, Briscoe alleges he was not provided with an amortization schedule at closing, that certain required disclosures were not made to him, and that some items were misidentified on the settlement statement or not paid as set forth in the statement.

losses allegedly caused by NHFC's malfeasance as a loan servicer. NHFC appears to have been terminated by BOK in late 1991 or early 1992, and replaced by Mortgage Clearing Corporation (MCC).[2]

MCC wrote to Briscoe in February 1992, and informed him that the principal balance of his loan was $68,011.94. The balance should have been $65,924.54 had his payments been increased as required by the note.

Though MCC, like NHFC, attempted to increase Briscoe's monthly payments, it did not inform Briscoe of his proper payment.[3] In the trial court, Briscoe also presented evidence that MCC and NHFC refused to respond to his requests for a payment history analysis and other information about his loan and escrow account. After making his August 1991 payment, Briscoe ceased making payments to NHFC, MCC, or BOK, though he does claim he has tendered payments to a trust account at an unnamed bank.

In June 1992, BOK brought this action for a personal judgment against Briscoe and for foreclosure. Briscoe asserted various affirmative defenses and a counterclaim against BOK, and brought a third-party action against NHFC and MCC. As affirmative defenses, Briscoe alleged he had tendered required payments but that they had been refused; that BOK and its alleged agents, NHFC and MCC, had violated federal and state lending laws; and that damages resulting from those actions, as well as from the third-party and counterclaims, entitled Briscoe to a setoff against any amounts due BOK under the note and mortgage. The counterclaim and third-party claims alleged theories sounding in breach of contract, breach of fiduciary duty, negligent selection and supervision of loan servicers, fraud, misrepresentation, and "wrongful foreclosure." Briscoe sought actual and punitive damages.

In March 1994, BOK moved for partial summary judgment on the issues of Briscoe's liability on the note and on Briscoe's counterclaim. The trial court sustained the motion, holding that Briscoe's claim for wrongful foreclosure was premature. It also held that BOK was protected, by the immunity provisions of 60 O.S.1991 § 179, from liability or setoff arising from Briscoe's counterclaim or affirmative defenses. The court also held that the only remaining issue concerned the balance due under the note.

Following non-jury trial on that issue, the trial court entered judgment against Briscoe in the principal amount of $68,011.94, together with interest, attorney fees, and costs. A default judgment of $17,133.78 was entered against NHFC on Briscoe's third-party claim.[4] The award to Briscoe included damages for NHFC's violations of TLA and RESPA, as well as for additional interest payments that would have been due because of NHFC's failure to calculate loan increases, and costs that Briscoe incurred filing corrected income tax returns because of NHFC's failure to provide accurate tax statements. That judgment is not appealed.

In his appeal Briscoe asserts four allegations of error, two of which complain of the trial court's summary judgment determination that 60 O.S.1991 § 179, grants BOK immunity from Briscoe's claims as a matter of law, and that section 179 bars Briscoe's use of the claims as a setoff. Briscoe also contends the trial court erred in finding Briscoe's note and mortgage were in default sole-

---

**2.** The record reflects no correspondence from NHFC to Briscoe after 1991. Letters from MCC begin in early 1992.

**3.** The record contains at least four letters addressed to the amount Briscoe should be required to pay. First, NHFC notified Briscoe his P & I payment would be increased to $817.50 on July 1, 1991. In January 1992, five months after Briscoe quit paying the servicer, MCC notified him he was delinquent by $4,936.78 (equal to $978.36/month based on a five-month delinquency) and demanded that he reinstate the entire amount. Two months later, BOK's counsel noti-

fied Briscoe's counsel that bringing the loan current would require a principal payment of $748.60 and interest payment of $7,392 (equivalent to $1,162.94/month). Then, in April 1992, a loan analysis sent to Briscoe by MCC notified him that his monthly payment through May 1992 would be $932, and would increase to $938 in June 1992.

**4.** This followed Briscoe's dismissal without prejudice of his action against MCC, which had answered and asserted defenses in the case.

ly because of Briscoe's conduct, and that it committed reversible error when it denied certain aspects of Briscoe's motion to compel BOK to produce documents relating to BOK's relationship with the loan servicers.

■ We review, first, the trial court's grant of judgment to BOK based on its finding that BOK was protected by the immunity granted in 60 O.S.1991 § 179. Section 179 provides:

> The trustee, or trustees, under such an instrument or will shall be an agency of the state and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property; but any act, liability for any omission or obligation of a trustee or trustees, in the execution of such trust ... shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise.

Section 179 is included among a group of statutes relating to the creation, activities, and liability of *public* trusts. 60 O.S.1991 and Supp.1994 §§ 176 though 180.56. The "instrument or will" described in section 179 refers to the document creating the public trust described in section 177. Under the document by which OHFA is created, the trustees are five named individuals and the beneficiary is the state of Oklahoma. Section 179 extends immunity from "personal liability" only to the trustees and beneficiaries of the *public trust itself.* Section 179 does not extend such immunity to an entity, such as BOK, that has contracted with OHFA to serve as a trustee for the benefit of the holders of bonds issued by OHFA, pursuant to an instrument other than the document creating the public trust. We thus disagree with the trial court's determination that section 179 applies to shield BOK from Briscoe's claims and defenses in this case.

■ However, even if section 179 does not apply, the immunity provisions of 60 O.S.1991 § 174, afford similar protection from "personal liability" to trustees of private trusts. In this regard, we note that, if a trial court order reaches a correct result, even if for the wrong reason, the decision will not be overturned by this court on appeal. *See Matter of Estate of Bartlett,* 680 P.2d 369 (Okla.1984). Such is the case here, at least as concerns BOK's "personal liability" for actions it took in its capacity as bond indenture trustee in fulfilling the duties of the trust. BOK is therefore entitled to section 174's protection from personal liability to third parties for BOK's acts or omissions—tortious or otherwise—performed in its capacity as bond indenture trustee.

■ Further, BOK cannot be independently liable to Briscoe for claims that purport to arise from BOK's alleged breach of fiduciary duty by improperly administrating the trust estate, including its alleged negligence in hiring and retaining NHFC. A trustee owes its duty of proper administration to the beneficiaries of the trust estate—not to a third-party debtor of the trust. *See Burford v. Stuart,* 422 P.2d 428 (Okla.1967). As a debtor of the trust, Briscoe is not entitled to bring an action for breach of fiduciary duty against its creditor, the trustee. *See Crockett v. Root,* 194 Okla. 3, 146 P.2d 555 (1943). We thus agree with the trial court's denial of Briscoe's right to file such claims against BOK personally or as trustee.

■ However, sections 174 and 179 each contemplate that the trust estate may be held liable for the acts and omissions of a trustee *in its dealings with third parties.* In addition, it is possible that a trustee may commit actions or omissions outside the scope of its role as trustee, exposing the trustee to personal liability. *Id.* In this regard, we disagree with the trial court's determination that there are no disputed facts sufficient to hold the trust estate liable for BOK's actions or omissions in the servicing of Briscoe's loan, or in directing the servicers' actions.

■ Summary judgment is appropriate only if the record discloses uncontroverted material facts that fail to support any legiti-

mate inference favoring the well-pled theory of the party against whom judgment was granted. The court must review the evidence presented, and must construe it in a light most favorable to the party opposing the motion. *Kissee,* 859 P.2d at 505. "We observe that summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use." *Weaver v. Pryor Jeffersonian,* 569 P.2d 967, 974 (Okla.1977).

■■■■■ The record here reflects material facts in dispute as to whether BOK actually serviced Briscoe's loan, or whether BOK controlled the actions of NHFC and MCC such that a principal-agent relationship between BOK and the loan servicers was established. Oklahoma's law of agency holds that a principal-agent relationship is created from the parties' agreement and/or conduct which shows that one is willing for the other to act for it, subject to its control, and that the other consents so to act. "It is not necessary that the parties intend to create the legal relationship or to subject themselves to the liabilities which the law imposes upon them as a result of it." *Farmers Nat'l Grain Corp. v. Young,* 187 Okla. 298, 102 P.2d 180, 185 (1940). *See also Campbell v. John Deere Plow Co.,* 197 Okla. 403, 172 P.2d 319 (1946); and *Curtis v. CIA Machinery, Inc.,* 571 P.2d 862 (Okla.Ct.App.1977).

■■■■■ Whether an agency relationship exists generally is a question of fact. Further, once it is established that such a relationship exists, evidence of the principal's long-term acquiescence in an agent's unauthorized conduct may amount to ratification of such conduct by the agent so that the principal is estopped from denying liability for it. *See Mertz v. Owen,* 191 Okla. 77, 126 P.2d 720, 729–30 (1942) ("[W]hen a principal knows or should know" his agent's acts are contrary to the agent's duty to his principal, or are "contrary to good judgment and good management," the principal has a duty to "speak at once and exercise the control and authority that are his," and "a failure to do so for a period of years amounts to acquiescence or ratification. . . .").

Here, the 1983 bond indenture agreement contemplates that the trustee's duties include those of servicing loans, or monitoring the servicing of loans, particularly if a loan servicer did not perform as required by its agreement with OHFA. BOK admittedly terminated NHFC as a servicer. BOK also relies extensively on authority relating to debtor-creditor relationships, indicating that it, also, perceives itself in the position of a creditor in its relationship with Briscoe.

Further, among the documents produced by BOK is a copy of a letter dated April 8, 1991, from BOK's counsel to an attorney whose clients are described as being "related to" the OHFA programs. The letter states BOK had determined there was "ample basis" to terminate NHFC as a loan servicer, and that BOK was prepared to do so provided that various insurance carriers related to the loan program concurred in the decision. BOK thus was obviously aware, prior to April 1991, of serious problems with NHFC's performance as a loan servicer. Other correspondence includes a March 1992 letter from BOK's counsel to Briscoe's counsel, delineating the amounts due under Briscoe's note, and urging Briscoe to make a proposal "to address this matter." A letter reflecting a January 15, 1991, date also appears in the record, in which MCC requests BOK to advise "how you wish these loans to be handled or corrected without it being a hardship on the mortgagor."

The record also reveals factual disputes as to the extent, if any, to which Briscoe was damaged by BOK, NHFC, and MCC's alleged malfeasance. In light of the foregoing, we cannot agree, based on the record presented to the trial court, that the undisputed facts show the trust estate and/or BOK are completely without potential liability for any actions BOK might have taken as a loan servicer, or as principal.

■■■■■ As such, the trial court's determination that the note and mortgage were in default solely because of Briscoe, and that BOK is entitled to recover on the full amount due under the note, is premature. We do not, by this holding, intend to suggest that Briscoe's complete failure to pay BOK since September 1991 is anything other than an outright default under the note and mort-

gage. Unquestionably, the note and mortgage, both signed by Briscoe, provide for the mortgagee's right to accelerate the debt and foreclose the mortgage upon the mortgagor's failure to pay an installment when due. Briscoe's alleged payment into an unnamed bank account—assuming the allegation is true—is an insufficient tender of payment to avoid default under the note and mortgage. *See Davidson v. Rogers,* 471 P.2d 455 (Okla. 1970); *Sheets v. Hocker,* 34 Okla. 676, 128 P. 725 (1912).

■ Under Oklahoma law, however, the holder of a validly executed note is entitled to payment in full only if the payor does not prove a defense or claim in recoupment. 12A O.S.Supp.1994 § 3–308(b) (former section 3–307, as amended). A "recoupment" is the "right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." *Black's Law Dictionary* (4th ed. 1968). The Oklahoma Supreme Court also has recognized that in some cases, where there has been only a technical default, and there is no damage to the mortgagee's security, equity may be invoked to estop a mortgagee from accelerating the mortgage debt and foreclosing its mortgage. *See, e.g., Murphy v. Fox,* 278 P.2d 820 (Okla.1955).

We reiterate that we do not here imply that Briscoe's complete failure to pay BOK since September 1991 is anything other than a default. However, because we have determined that fact issues exist concerning Briscoe's potential defenses and claims of recoupment under those instruments, BOK is not entitled, at this stage, to summary judgment for the full amount of its note, and for foreclosure of Briscoe's residential mortgage. The trial court's judgment thus will be reversed to the extent it decided otherwise, and remanded for further proceedings on these issues.

■ This brings us to Briscoe's allegation of error concerning the trial court's denial of portions of his first motion to compel discovery of certain BOK documents related to BOK's relationship with the loan servicers. A trial court is accorded broad discretion in deciding discovery matters, and its determination in such matters will not be disturbed absent a finding of abuse of discretion or that the decision is contrary to law.

Here, the trial court appears to have limited Briscoe's discovery of BOK documents based on its assumption that BOK had complete immunity from Briscoe's claims. We have held, however, that BOK may be liable for actions or omissions that occurred in the servicing of Briscoe's loan (whether perpetrated by BOK directly or by virtue of a principal-agent relationship). Thus, documents related to the nature of BOK's working relationship with the servicers—not necessarily limited to Briscoe's transaction alone—are relevant, and on remand discovery should be permitted regarding the same.

■ We address, finally, the petition-in-error filed by BOK and styled as a "counter-appeal" from the trial court's denial, in 1993, of BOK's motion for summary judgment based on its argument that Briscoe's claims under TLA and RESPA are time-barred. We consider this argument by BOK as a potential alternative ground on which to affirm the trial court's judgment denying Briscoe's claim to a setoff based on these violations. *See Bartlett,* 680 P.2d at 374.

RESPA and TLA require that an action for a violation of either act be brought within one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614; 15 U.S.C. § 1640(e). TLA also provides:

This subsection does not bar a person from asserting a violation ... in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, *except as otherwise provided by State law.*

15 U.S.C. § 1640(e) (emphasis added).

Under 12 O.S.1991 § 2013(C):

Where a counterclaim and the claim of the opposing party arise out of the same transaction or occurrence, the counterclaim shall not be barred by a statute of limitation notwithstanding that it was barred *at the time the petition was filed,* and the

counterclaimant shall not be precluded from recovering an affirmative judgment. . . .

Where a counterclaim was barred by a statute of limitation *before the claim of the opposing party arose, the barred counterclaim cannot be used for any purpose.* (Emphasis added).

Applying the foregoing to the case at bar, we agree with BOK that Briscoe is precluded from asserting some of the alleged statutory violations, even though those violations did arise from the same transaction on which BOK sued. Clearly, Briscoe's right to file an independent action for TLA and RESPA violations expired one year after those violations occurred. Without addressing the merits of the claimed violations, we note that most of the matters complained of occurred at the loan closing in May 1984. BOK's right of action against Briscoe did not arise until Briscoe defaulted on his mortgage payments in late 1991.

Thus, to the extent the violations occurred more than a year before the date Briscoe was deemed to be in default under his note and mortgage—i.e., more than a year before BOK's right of action accrued—then Briscoe is precluded by section 2013 from raising claims based on those violations in his defense of BOK's action against him. However, to the extent Briscoe alleges violations that occurred during or after the one-year period before BOK's right of action accrued, he may assert them. To the extent the trial court held otherwise in its final judgment against Briscoe, its decision is reversed.

We reject Briscoe's contention that fact issues are presented to support his argument that the doctrine of equitable tolling of the statute of limitations should be applied to allow him to assert all of the alleged TLA and RESPA violations, because of BOK's (or the other servicers') alleged fraudulent concealment of those violations. The record is devoid of any evidence to support an allegation of fraud or intentional misrepresentation by BOK or the other servicers. We, therefore, agree with, and affirm, the trial court's decision to the extent it precluded Briscoe's continued pursuit of that theory as a matter of law.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

RAPP, V.C.J. (sitting by designation), and STUBBLEFIELD, J. (sitting by designation), concur.