F I L E D
United States Court of Appeals
Tenth Circuit

AUG 28 2001

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

BILLY MAULDIN,

        Plaintiff-Appellant,

v.

WORLDCOM, INC.,

        Defendant-Appellee.

No. 00-5134

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 98-CV-0307-K(M))**

Julie E. Heath, Dallas, Texas, (Christopher S. Thrutchley, Tulsa, Oklahoma, with her on the brief), for Plaintiff-Appellant.

Steven A. Broussard (William D. Fisher with him on the brief), of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Defendant-Appellee.

Before **TACHA**, Chief Circuit Judge, **McKAY**, Circuit Judge, and **CUDAHY**, Circuit Judge.[*]

**CUDAHY**, Circuit Judge.

---

[*] The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Between 1994 and 1996, Billy Mauldin entered into four stock option agreements with his employer, MFS Intelenet, Inc. (MFS). Each agreement provided that Mauldin's options would vest immediately if he suffered diminished responsibility or pay within two years of a change of control of MFS. Thus, after WorldCom, Inc. (WorldCom) acquired MFS in 1996 and allegedly altered the terms of Mauldin's employment, Mauldin requested that he be allowed to exercise all of his options immediately. When WorldCom denied his request, Mauldin sued. The district court granted summary judgment in favor of WorldCom; we reverse and remand for further proceedings consistent with this opinion.

**I.**

In May 1994, MFS, which is in the business of providing telecommunications services, hired Mauldin into the position of city operations manager for Houston, Texas. One month later, Mauldin transferred to Los Angeles, California, but he returned to Texas in June 1996 as the city operations manager for Dallas. Mauldin's responsibilities in Dallas included the design and maintenance of MFS's telecommunications system. Mauldin also supervised three engineers, as well as a staff of unspecified size, who assisted him with his duties.

Throughout Mauldin's employment with MFS, MFS had in place a stock

plan known as the MFS Communications Company, Inc. 1993 Stock Plan, which

MFS created with the purpose of "enabl[ing] Employees and Outside Consultants

to share in the growth and prosperity of the Company by encouraging stock

ownership by Employees and outside Consultants and . . . assist[ing] the

Company to obtain and retain skilled personnel and consultants." Under the Plan,

a Compensation Committee selected from members of MFS's board of directors

was permitted to award stock options to MFS employees. Importantly, the Plan

granted the Compensation Committee broad discretion in exercising the powers

vested in it:

> The Plan shall be administered by the [Compensation] Committee. A majority vote of the Committee . . . shall be the valid acts of the Committee for the purposes of the Plan . . . .
>
> The Committee shall have plenary authority in its discretion, but subject to the express provisions of the Plan, to determine the terms of all Benefits granted under the Plan including, without limitation . . . to interpret the Plan and to make all other determinations deemed advisable for the administration of the Plan. The Committee may designate Employees of the Company to assist the Committee in the administration of the Plan and may grant authority to such persons to execute option agreements or other documents on behalf of the Committee.
>
> * * *
>
> The Committee may make such rules and regulations and establish such procedures as it deems appropriate for the administration of the Plan. In the event of a

disagreement as to the interpretation of the Plan or any amendment hereto or any rule, regulation or procedure thereunder or as to any right or obligation arising from or related to the Plan, the decision of the Committee shall be final and binding.

MFS Stock Plan, Article X.

During his employment with MFS, Mauldin entered into four stock option agreements dated September 30, 1994, December 30, 1994, December 29, 1995, and December 31, 1996. Each agreement was entitled "Stock Option Agreement/1993 Stock Plan" and was entered into "to carry out the purposes of [MFS's] 1993 Stock Plan." Each option agreement provided that Mauldin would forfeit all unvested options if he voluntarily resigned, but also provided that in the event of a "change in control" followed by his involuntary termination within two years, the full number of options would immediately vest (a phenomenon known as "accelerated vesting"). The agreements defined "involuntary termination" to include "the constructive involuntary termination of the Employee's employment with the Company and its subsidiaries after a Change of Control." In turn, the agreements defined "constructive involuntary termination" to "include (x) a material reduction in the Employee's compensation (including applicable fringe benefits) or (y) the demotion or diminution in the Employee's position, authority, duties or responsibilities without cause." Importantly, each of the agreements states, "The Options may be exercised by written notice to the Company,

-4-

addressed to its Stock Option Administrator." Only the last two agreements—dated December 29, 1995 and December 31, 1996—designate a stock option administrator, stating that "[t]he Stock Option Administrator shall mean that person designated by the Company as such, or his or her successor, initially Robert J. Ludvik, MFS Communications Company . . . ."

On December 31, 1996, WorldCom acquired MFS, effecting a "change in control" as that term is defined in Mauldin's four stock option agreements. Mauldin believed that his responsibilities were substantially reduced following the merger because WorldCom removed three engineers from his direct supervision and placed them in a newly established Planning and Implementation Group. In addition, Mauldin believed that he suffered reductions in his compensation and fringe benefits because of changes in his bonus plan, reduction of health care benefits and loss of ability to accrue stock options.

Mauldin notified WorldCom that he considered the above-noted reductions to constitute a "constructive involuntary termination" under his option agreements, and threatened to resign if his responsibilities and benefits remained unchanged. In response, WorldCom asserted that it did not consider the terms of Mauldin's employment to have been altered following the merger, and that it thus would not increase his responsibility or pay as requested. As a result, Mauldin resigned, accepted a more lucrative position with another employer and petitioned

WorldCom's human resources department for the immediate vesting of the remainder of his stock options on the basis of his alleged "constructive involuntary termination."

Roseanne Dickerson, vice president of human resources at WorldCom, received Mauldin's request and initiated an investigation of his claim by contacting Don Davenport, a manager under whom Mauldin had worked. Davenport expressed his opinion that Mauldin's duties had not been diminished, because although Mauldin's three engineers had been moved into the Planning and Implementation Group, they continued to interact with Mauldin as they had before MFS's merger with WorldCom. (Unlike Davenport, Mauldin's direct supervisor—who, Mauldin notes, was not contacted by Dickerson—believes that Mauldin's responsibilities *were* diminished following the merger). Dickerson reported Davenport's opinion to Margaret Coons, another human resources employee. In turn, Coons gathered further, unspecified information, which, together with the information from Dickerson, she forwarded to Dennis Sickle, WorldCom's senior vice president of human resources. Sickle reviewed the evidence relating to Mauldin's request for accelerated vesting and made the ultimate decision to deny Mauldin's claim.

At the time of Sickle's decision, no member of the Compensation Committee had reviewed Mauldin's claim. However, on September 10, 1997, the

WorldCom Compensation and Stock Option Committee[1] convened and considered the various requests for acceleration that MFS employees had presented to WorldCom. The minutes of the meeting reflect that the board approved Sickle's actions, but do not indicate that the board specifically considered Sickle's handling of Mauldin's claim:

> Following a discussion of previous actions, the Committee ratified and approved the prior appointment of, and delegation of the Committee's authority to . . . Dennis Sickle . . . to review, approve or deny, or take other actions with respect to requests for acceleration of vesting of stock options and other benefits of directors, employees, agents or consultants of MFS Communications Company, Inc. and its subsidiaries ("MFS") pursuant to the plans and programs of MFS, subject to oversight by and direction of the Chairman of this Committee, and ratified and approved all previous actions of such individuals in that regard.

After learning of the Committee's action, Mauldin brought this suit to obtain accelerated vesting of his outstanding unvested stock options. On cross-motions for summary judgment, the district court found that genuine issues of fact existed with regard to Mauldin's claim of constructive involuntary termination.

---

[1]    Following MFS's merger with WorldCom, the WorldCom Compensation Committee replaced the MFS Compensation Committee as the body responsible for overseeing the MFS Stock Plan. Mauldin argues that "[i]t is both illogical and contrary to the expression of intent in the Agreements to assert that the MFS Stock Plan contemplates that WorldCom would be the arbiter over decisions regarding the change of control clause." Appellant's Br. at 29. The record on appeal indicates that Mauldin did not raise this argument below, and we therefore do not reach it on appeal. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 720-21 (10th Cir. 1993).

Among the disputed facts noted by the court were whether Mauldin suffered a material reduction in his compensation following the merger and whether Mauldin suffered a material reduction in his duties following the merger. However, because the stock plan gave the Compensation Committee "plenary authority" to make "final and binding" decisions regarding plan interpretation, the district court applied the rule of Weir v. Anaconda Co., 773 F.2d 1073 (10th Cir.1985), under which, in the absence of arbitrary behavior, bad faith or fraud, a court defers to a Committee's decision. Because it did not find any evidence that the denial of Mauldin's claim was arbitrary or capricious, the district court granted summary judgment in favor of WorldCom. Mauldin appeals.

## II.

On appeal, Mauldin contends that the district court erred by (1) interpreting the agreements and Plan to allow Sickle, and not the Compensation Committee, to decide Mauldin's claim and (2) applying an "arbitrary and capricious" standard of review to the Compensation Committee's denial of his benefits. We review de novo the district court's disposition of this case on summary judgment. See Bohn v. Park City Group, Inc., 94 F.3d 1457, 1460 (10th Cir.1996). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In reviewing the factual record, we construe all facts and make reasonable inferences in the light most favorable to the non-moving party. See Headrick v. Rockwell Intl. Corp., 24 F.3d 1272, 1275 (10th Cir.1994).

## A.

Mauldin raises questions that require interpretation of his stock option contracts, and we must thus first determine what body of law governs the interpretation of these contracts—a determination we make de novo. See Mitchell v. State Farm Fire & Cas. Co., 902 F.2d 790, 792 (10th Cir.1990). Because neither party argues that the option contracts are subject to the Employee Retirement Income Security Act (ERISA), we do not consider ERISA in analyzing Mauldin's contract claims.[2] See Rademacher v. Col. Ass'n of Soil Conservation Dists. Med. Benefit Plan, 11 F.3d 1567, 1572 (10th Cir. 1993)

---

[2] It is surprising that neither party briefed the issue whether ERISA governs Mauldin's stock option agreements, especially since at least one court has considered this to be a substantial question. See Jenkins v. WorldCom, Inc., 96 F.Supp.2d 936, 943 (D. Nebr. 1999) (issues of fact precluded summary judgment on whether MFS stock option agreements were governed by ERISA); but cf. Kerkhof v. MCI WorldCom, Inc., 2000 WL 1196334 (D. Maine June 26, 2000) (Cohen, Magistrate J.) (applying state law to interpretation of MFS stock option agreements because both parties assumed state law applied).

(failure to timely raise ERISA defense may result in waiver); In the Matter of HECI Exploration Co., Inc., 862 F.2d 513, 521 & n.13 (5th Cir. 1988) (parties may waive ERISA-preemption arguments when waiver only affects law to be applied, and not choice of forum).

Because ERISA does not govern, we must choose an appropriate state's contract law in order to interpret the terms of Mauldin's stock option agreements. A federal trial court sitting in diversity jurisdiction must apply the choice of law rules of the forum state—here, Oklahoma. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); TPLC, Inc. v. United Nat'l Ins. Co., 44 F.3d 1484, 1490 (10th Cir.1995). Mauldin argues that, under Oklahoma choice of law principles, Texas contract law applies. WorldCom presents only a footnote in weak opposition, asserting that Nebraska law "arguably" applies and that "under either Nebraska or Texas contract law, the District Court's decision should be affirmed." Appellee's Br. at 18 n.1. However, the remainder of WorldCom's brief belies this rather dispirited argument, for, in citing authority, WorldCom's brief relies substantially more on Texas precedent than on that of Nebraska. Accordingly, WorldCom's protest against the application of Texas law is so feeble that it amounts to a waiver of the argument, and we apply Texas law to the interpretation of Mauldin's option agreements. See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1547 (10th Cir. 1995) (parties may waive choice of law

arguments by failing to adequately brief them).

Under Texas law, if a corporate committee acts within the powers granted it under an agreement, the committee is entitled to deference so long as it acted in good faith. See Ennis Bus. Forms, Inc. v. Gehrig, 534 S.W.2d 183, 187 (Tex. Civ. App. 1976); Neuhoff Bros. Packers Mgmt. Corp. v. Wilson, 453 S.W.2d 472, 474-75 (Tex. 1970).[3] In determining whether the Committee acted within its power under the Stock Plan and agreements, we bear in mind that if the terms of a contract are unambiguous, construction of the agreement remains a question of law for the court's determination. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). It is the obligation of the interpreting court to ensure that the plain meaning of the express terms of an agreement are enforced. Id.

**B.**

Having determined that Texas law applies to the interpretation of Mauldin's agreements, we turn now to the merits of this cause. Neither party disputes that Sickle, who was not a member of WorldCom's Compensation Committee, but rather WorldCom's senior vice president of human resources, made the decision to deny

---

[3]     Texas thus applies a deferential standard that is similar to the standard applied by the district court, which relied on Weir v. Anaconda Co., 773 F.2d 1073 (10th Cir. 1985). However, Weir applies Kansas law, and the district court thus erred—albeit harmlessly—by relying on it, rather than Texas precedent.

Mauldin's request for accelerated vesting. And while the option agreements require the Compensation Committee—not Sickle—to decide Mauldin's claim, each of the agreements allow the Committee to delegate this duty to Sickle, an employee of the company:

> The Committee may designate Employees of the Company to assist the Committee in the administration of the Plan and may grant authority to such persons to execute option agreements or other documents on behalf of the Committee.[4]

Accordingly, in order to have acted within its power (and thus qualify for review under the deferential standard that the district court employed), WorldCom must show that the Committee properly delegated its authority to Sickle before he denied Mauldin's request or, if it did not adequately delegate, that the Committee at least ratified Sickle's decision after he denied the request. The only evidence of delegation and ratification presented by WorldCom is found in the minutes of the Committee's September 10, 1997 meeting, in which the Committee "ratified and approved the prior appointment of, and delegation of the Committee's authority to . . . Dennis Sickle." Thus, we concentrate on whether these minutes constitute an adequate delegation of authority to

---

[4] Mauldin interprets this provision to only allow for delegation of solely ministerial tasks. Mauldin believes that a determination as to the validity of his claim is not such a ministerial task. However, Mauldin cites no precedent in support of his restrictive reading, and we believe that the plain meaning of "administration of the Plan" extends beyond ministerial tasks to include the delegation of authority to render decisions in accelerated vesting requests. Our belief is reinforced by the fact that the Plan allows delegation of the authority to execute option agreements and other documents—neither of which are merely ministerial tasks.

Sickly, or ratification by the Committee of Sickle's decision, to deny Mauldin's request.

We begin by discussing whether the Committee minutes adequately show that the Committee delegated its authority to interpret the stock options to Sickle. "No particular language is necessary for an effective delegation of performance," III E. Allan Farnsworth, Farnsworth on Contracts § 11.10 at 124, and delegation may be express or implied. See Wells Fargo Bus. Credit v. Ben Kozloff, Inc., 695 F.2d 940, 944-45 (5th Cir. 1983). However, a principal must have delegated authority to an agent prior to the agent's act, or else the agent will not have authority at the time of the act in question. As noted, the Committee's September 10, 1997 meeting minutes—which state that the Committee "approved the prior appointment of, and delegation of the Committee's authority to . . . Dennis Sickle"—are WorldCom's only evidence that it adequately delegated authority to Sickle. However, this meeting occurred *after* Sickle had denied Mauldin's request, and it thus does nothing to show that the Committee had delegated its authority to Sickle before he handled Mauldin's claim. (While the minutes do mention "the prior appointment of" Dennis Sickle, they do not state when, or how, Sickle was appointed; the reference to Sickle's prior appointment is thus too vague to sustain a finding of express delegation.) In addition, that the Compensation Committee failed to explicitly delegate its authority is also suggested by the fact that the Committee stated it was ratifying Sickle's decisions at the September 10, 1997 meeting, an act which would have

-13-

been unnecessary if the Committee truly believed that it had delegated its authority to Sickle prior to the meeting. Accordingly, WorldCom has failed to show that the Committee expressly delegated its authority to Sickle.

WorldCom has also failed to establish an implied delegation of authority to Sickle. This would not be a difficult argument to make, for common sense dictates that:

> With a Fortune 500 company . . . it is necessary that many different and varying functions and duties be delegated to officers and employees of the corporation in order that the operation of the corporation may be conducted in a continuous, systematic and profitable manner. This often involves giving wide latitude and discretion to corporate personnel. To require that a company . . . draft a corporate resolution authorizing its personnel to make everyday decisions regarding the conduct of the corporation's affairs would be to place unduly burdensome restrictions on a large corporation . . . .

Karam v. Travelers Ins. Co., 813 F.2d 751, 753 (5th Cir. 1987) (quoting opinion below). However, WorldCom does not argue in its brief that the Committee had impliedly delegated authority to Sickle, although such an argument, coupled with a more complete record in support, might have been persuasive. Thus, WorldCom has waived this argument, Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 624 (10th Cir.1998), and has failed to show that WorldCom's Compensation Committee adequately delegated authority to Sickle to decide Mauldin's request.[5]

---

[5] WorldCom also failed to raise—and we thus do not address—at least one other argument that might have led to the conclusion that WorldCom did

(continued...)

In spite of the Committee's failure to adequately delegate its authority to Sickle, WorldCom's denial of Mauldin's request may nonetheless be entitled to the deferential review applied by the district court, if the Committee validly ratified Sickle's decision. Ratification may be express or implied. See Petroleum Anchor Equip. Inc. v. Tyra, 419 S.W.2d 829, 834 (Tex. 1967); Thermo Products Co. v. Chilton Indep. Sch. Dist., 647 S.W.2d 726, 733 (Tx. App. 1983). However, absent "full knowledge . . . by the principal . . . or, alternatively, unless there is full evidence of facts from which such knowledge can reasonably be imputed to the principal, the evidence as to ratification will be deemed to be insufficient." 3 Tex.Jur.3d, Agency § 112; see also Brown v. Grayson Enters., Inc., 401 S.W.2d 653, 656 (Tex.Civ.App.1966) ("'[T]he cornerstone of ratification is knowledge of all material facts.' At least, there should be such evidence as to justify the presumption that the corporation did have such knowledge.") (quoting Almar-York Co. v. Fort Worth Nat'l Bank, 374 S.W.2d 940 (Tex. Civ. App., 1964)); Restatement (Second) of Agency § 82 (1958) (there is "no ratification unless an act has been done which the purported or intended

_____

(...continued)
adequately delegate authority to Sickle. The stock option agreements allude to a stock option administrator, and two of the agreements actually name Robert J. Ludvik and his successors as the administrator. Accordingly, WorldCom might have argued that the designation of an administrator in Mauldin's agreements adequately delegated the Committee's authority. However, WorldCom did not make this argument, and the record does not indicate that the Committee designated Sickle as the administrator, or that he was Ludvik's successor.

-15-

principal could have authorized . . . by a person who, at the time of affirmance, knows the facts . . . .").

The parties differ sharply as to just how much knowledge of Sickle's conduct the Committee was required to have in order to receive deferential review. WorldCom asserts that the Committee was only required to know that Sickle had handled the accelerated vesting claims of former MFS employees. At first blush, this line of reasoning appears to find some support in Texas precedent. See Great Plains Life Ins. Co. v. First Nat'l Bank of Lubbock, 316 S.W.2d 98, 106 (Tex. Civ. App. 1958) ("[N]o higher degree of evidence is requisite in establishing ratification on the part of a corporation than is requisite in showing an antecedent authorization."); Jackson v. Gray, 558 S.W.2d 138, 139 (Tex. Civ. App. 1977) (holding that reasons behind agent's actions are immaterial to a board's ratification of the act). However, in neither of these cases was a more lenient standard of review tied to the question of ratification. The cases are thus distinguishable because they do not involve the same policy concern as is at issue here: when a stock plan grants a committee discretion in administering the plan, the committee's decisions are granted deference—if the committee acted in good faith and within its power—because the committee has made itself at least minimally familiar with an employee's claim and exercised some judgment in addressing the claim's merits. This policy of deferring to a committee's informed

decision would be rendered meaningless if a committee could receive deferential review by ratifying an agent's unauthorized general course of conduct without knowing the specific decisions made by the agent and the facts that informed those decisions. Thus, if a committee wishes to properly ratify an agent's stock option vesting decisions, the material facts of which a committee must be at least minimally aware are the vesting decisions made by the agent and the agent's basis for making them. Here, the minutes of the meeting at which the Committee ratified Sickle's conduct do not even indicate that the Committee was aware of Mauldin's claim, much less knew of any facts underlying the claim. Thus, even if Sickle's decision was informed, the Committee did not know this at the time it purported to ratify his decision. Therefore, the decision is not entitled to deferential review and must instead be reviewed de novo.

We conclude by emphasizing the reason why WorldCom's decision must be reviewed de novo. As noted, under Texas law, corporate boards and committees receive deferential review if they act in good faith and within the scope of their authority. Deferential review is also appropriate if a corporate board or committee effectively delegates its discretion to an agent or properly ratifies an exercise of discretion by an unauthorized agent. Here, WorldCom has constructed its arguments in favor of delegation and ratification around only one piece of evidence—the minutes of the Compensation Committee's September 10, 1997

-17-

meeting. As discussed, these minutes do not suffice to prove either delegation or ratification. As also discussed, while other arguments—such as Sickle's implied authority—might have been persuasive, WorldCom did not make them or place evidence in the record that might support them; these arguments were thus waived. The arguments that WorldCom presented all fail, and de novo review is thus appropriate.

## C.

Because WorldCom's Compensation Committee did not properly delegate to Sickle the exercise of its discretion or adequately ratify Sickle's decision, the decision to deny Mauldin's claim must be reviewed de novo. In its decision, the district court noted numerous factual disagreements—including whether Mauldin's pay and responsibility were reduced following MFS's merger with WorldCom—that will require a trial (or summary judgment, if appropriate) on remand. Because of the change in the standard of review, the parties will be free to supplement the existing record on remand. See Fitts v. Fed. Nat'l Mortgage Ass'n, 236 F.3d 1, 6 (D.C. Cir. 2001). Mauldin is especially encouraged to do so, for the record currently appears to contain no more than the kind of unsubstantiated assertions—such as the claim that his benefits were reduced, with no indication as to which benefits were reduced, or by how much—that would

justify a grant of summary judgment in favor of WorldCom.

## III.

For the foregoing reasons, the district court's entry of summary judgment in favor of WorldCom is REVERSED and REMANDED for further proceedings consistent with this opinion.