# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 10-3861/11-1061

_____

| | |
|---|---|
| Gaye Lynn Schaffart, | * |
| | * |
| Appellee/Cross-Appellant, | * |
| | * |
| v. | * |
| | * |
| ONEOK, Inc., | * |
| | * |
| Appellant/Cross-Appellee. | * |

_____

Nos. 10-3862/11-1062

_____

Appeals from the United States
District Court for the
District of Nebraska.

| | |
|---|---|
| Jerry Peters, | * |
| | * |
| Appellee/Cross-Appellant, | * |
| | * |
| v. | * |
| | * |
| ONEOK, Inc., | * |
| | * |
| Appellant/Cross-Appellee. | * |

_____

Submitted: November 15, 2011
Filed:  July 5, 2012

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

Gaye Lynn Schaffart and Jerry Peters (collectively, appellees) entered into performance and stock agreements with their employer, appellant ONEOK, Inc. The agreements required appellees to continue their employment for three years (performance period) in order to receive the full number of shares, but allowed pro rata payments if appellees' employment terminated under certain conditions. After appellees left ONEOK's employment, ONEOK denied appellees' claims for pro rata payments under the agreements. Appellees sued ONEOK for breach of contract.[1]

The cases were tried to the district court with an advisory jury. The district court and jury found for appellees. The district court granted appellees' joint renewed motion for judgment as a matter of law and denied ONEOK's. The district court awarded appellees money damages equal to each of their pro rata shares under the agreements, and denied their request for attorney fees.

ONEOK appeals the judgments, and appellees cross-appeal the denial of attorney fees. We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

_____

[1]Separate suits were filed in Nebraska state court and were removed to federal court under 28 U.S.C. § 1441(a). The cases were consolidated. Appellees are residents of Nebraska, and ONEOK is an Oklahoma corporation with its principal place of business in Oklahoma.

# I. BACKGROUND

## A. Factual Background

### 1. Agreements

Appellees were high-ranking executives in ONEOK's Omaha, Nebraska, office. In 2005 and 2006, appellees and ONEOK entered into written performance share and restricted stock agreements (agreements). ONEOK drafted these agreements and used them with several Omaha key employees. The 2005 agreements were pursuant to the ONEOK Long-Term Incentive Plan (LTIP), as amended, and its prospectus, and the 2006 agreements were pursuant to the ONEOK Equity Compensation Plan (ECP) and its prospectus (collectively, plans). The plans are not governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., because they were unfunded and maintained "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." ERISA § 201(2), 29 U.S.C. § 1051(2).

### 2. Forfeiture and Pro Rata Payments

The agreements required each appellee to continue employment with ONEOK for a three-year performance period to receive the full number of shares. Terminating employment before the end of the performance period resulted in forfeiting the shares, unless the appellee qualified for a pro rata award. The performance share and restricted stock agreements each required pro rata payments in the case of retirement, and the restricted stock agreements also required pro rata payments if the appellees were involuntarily terminated without cause. The agreements do not define "retirement" or "involuntary termination."

### 3. Authority to Administer the Plan

Section 2 of each agreement expressly gives the Executive Compensation Committee (ECC) of ONEOK's Board of Directors (Board) authority to administer the plans. The plans specify the ECC is to be composed of two or more non-employee directors. Unless the Board determines otherwise—and the record shows

the Board has not—the ECC directors must be "outside directors." The plans and agreements in similar, but not identical, terms give the "Committee"—which the plans and agreements clarify is the ECC—"full power to interpret, administer and construe the Plan and any instruments issued under the Plan and full authority to make all determinations and decisions thereunder." The plans and agreements further provide ECC's interpretations of the plans "shall be final, binding, and conclusive" on ONEOK and all participants and beneficiaries. Each agreement generally provides,

> The grant of the Award shall be subject to such other rules and requirements as the [ECC], in its sole discretion, may determine to be appropriate with respect to administration thereof and the terms and conditions made applicable to the Grantee and the [shares] during the [requisite period]. The Award, this instrument, and the rights and obligations of the parties thereto shall be subject to interpretation and construction by the [ECC] to the same extent and with the same effect as the [ECC] actions under pertinent provisions of the Plan.

### 4.    ONEOK Closes its Omaha Office

In 2006, ONEOK sold some of its assets to TransCanada and closed its Omaha office. TransCanada hired some of ONEOK's former employees in Omaha, but did not offer employment to appellees in Omaha. ONEOK told appellees they had to move to Tulsa, Oklahoma, to continue being employed by ONEOK. In August 2006, Schaffart informed ONEOK that personal obligations in Omaha prevented her from moving to Tulsa. Schaffart's last day working for ONEOK was December 31, 2006. Peters began commuting to Tulsa in spring 2006. Peters told ONEOK in February 2007 he could not continue commuting to Tulsa because his wife filed for divorce and initiated a custody dispute. His last day working for ONEOK was April 27, 2007.

### 5. Roth Denies Schaffart's and Peters' Claims

David Roth was ONEOK's Senior Vice President of Administrative Services and Authorized Representative and Fiduciary to the Benefit Plan Committee (BPC). He was not a member of the ECC.

When appellees terminated their employment before the earliest performance period ended, Roth alone determined appellees would not receive pro rata payments under the agreements. Roth concluded appellees voluntarily left ONEOK because they had declined transfers to Tulsa. Roth next considered whether appellees were eligible to claim "retirement." The agreements, plans, and prospectuses do not define "retirement," so Roth looked to ONEOK's separate retirement plan, which allows some participants to retire as early as age fifty. Roth determined Schaffart, age forty-seven, and Peters, forty-nine, had not retired. By comparison, ONEOK, under the same plan agreements, paid some of its former employees who accepted employment with TransCanada their prorated shares under the plans, without any requirement these employees be fifty years old or older.[2] The ECC did not decide or even review appellees' claims.

### B. Procedural Background

#### 1. Appellees' Request for Production and Cross-Motions for Summary Judgment

On January 26, 2010, appellees mailed ONEOK a request to produce all "minutes, notes, emails, memos or other written or electronic records of proceedings concerning the administration" of the agreements. In response, ONEOK produced some documents, including, at some point, a list of ONEOK's internal committees, which ONEOK offered at trial as Exhibit 102. ONEOK did not produce the Board

---

[2]Roth conceded at trial that he considered the "separation and decision to go to TransCanada" of at least one of the TransCanada hires "as voluntary." The decisions to freeze or prorate ONEOK shares for employees transferring to TransCanada were made by ONEOK's chairman, not by the ECC and not by Roth.

minutes and resolutions naming Roth as an Authorized Representative and Fiduciary of the BPC. These minutes and resolutions later became Trial Exhibits 142-145.

In August 2010, appellees and ONEOK filed cross-motions for summary judgment. In support of their motion, appellees argued ONEOK was not entitled to deferential review of Roth's decision because Roth was not authorized to deny appellees' claims. In response, ONEOK produced Trial Exhibits 142-145. Appellees moved to strike these exhibits from the summary judgment record because they were covered by appellees' request for production and not timely produced. The motion to strike became moot when the district court denied the motions for summary judgment.

### 2. Motion in Limine

After leaving ONEOK, but before filing the present case, Peters gave a deposition in his divorce case. In his deposition, Peters stated he would not be paid under the agreements, which he said "terminated" when he left ONEOK. Peters also denied knowledge of any interest in plans other than those they had discussed—having already discussed the ONEOK agreements. The divorce court did not include any ONEOK stock under the agreements in its division of marital assets, listing the value of ONEOK retirement benefits as "unknown." The district court granted Peters' motion in limine to exclude evidence Peters disclaimed his interests in the agreements during the divorce proceedings.

### 3. Trial

The case was tried to the district court and a jury, beginning on September 7, 2010. The parties stipulated to the number of shares each appellee would receive if either were entitled to a pro rata award. Peters testified to the shares' trading value at the time of trial, which ONEOK did not dispute.

The district court excluded Trial Exhibits 142-145, determining they clearly were included in appellees' discovery request and ONEOK did not timely produce them. The district court also restricted Roth's testimony about his authority from the Board to testifying about Trial Exhibit 102 itself, and that the Board appointed him Authorized Representative and Fiduciary to the BPC.

Before submitting the case to the jury, the district court took appellees' and ONEOK's motions for judgment as a matter of law under advisement. The district court found no factual issues and decided the jury would be advisory. See Fed. R. Civ. P. 39(c). The district court refused ONEOK's request to instruct the jury that it could not disturb Roth's determinations absent fraud, bad faith, or a gross mistake in judgment.

During deliberations, the jury questioned the district court's instructions, asking which of the following sentences from the instructions was controlling with regard to whether appellees retired or were involuntarily terminated:

> When a question exists as to the meaning of one of the agreements, that language should be construed against the party which prepared the agreement.

> If you find that any one of the elements of any one of [appellees'] claims has not been established by a preponderance of the evidence as to [ONEOK], you must find for [ONEOK] on that claim.

The district court responded that the jury should construe the language against ONEOK, noting the instruction concerning appellees' burden of proof did not "come[] into play" with respect to answering the jury's question.

In response to the questions on the verdict form, the advisory jury found (1) Roth did not have authority to determine whether appellees were entitled to pro rata distributions; (2) only the ECC had such authority; (3) appellees' terminations

-7-

were "retirements" under the agreements; and (4) appellees' terminations were "involuntary terminations" under the agreements.

### 4.    Post-Trial Rulings

After the advisory jury returned its verdict, appellees and ONEOK renewed their motions for judgment as a matter of law. On November 15, 2010, the district court granted appellees' motion and denied ONEOK's motion. The district court also denied ONEOK's alternative motions for a mistrial and a new trial.

The district court entered judgment for Schaffart in the amount of $254,856.39 and for Peters in the amount of $494,181.01. The district court denied appellees' request for attorney fees under the Nebraska Wage Payment and Collection Act (NWPCA), Neb. Rev. Stat. §§ 48-1228 to 48-1232.

### 5.    Appeals and Cross-Appeal

ONEOK timely appealed the district court's grant of appellees' renewed motion for judgment as a matter of law and denial of ONEOK's renewed motion for judgment as a matter of law. Appellees timely cross-appealed the district court's denial of their motion for attorney fees.

### 6.    ONEOK's Motion to Enlarge the Record

After the September 10, 2010 advisory jury verdict in the present case, Peters' ex-wife filed an amended complaint in the divorce action on September 14, 2010, claiming Peters defrauded her and the divorce court by not disclosing his interests in the ONEOK agreements. Peters asserted as an affirmative defense "that, during the divorce proceeding, he did not have a present interest in and entitlement to the corporate stock under the [agreements]." ONEOK moved to enlarge the record to include these pleadings from Peters' divorce action. We elected to take this motion with the case.

## II.    DISCUSSION

The parties' arguments on appeal, reorganized here, raise six major issues: whether the district court erred in (1) deciding Peters is not judicially estopped from claiming an interest under the agreements; (2) excluding evidence of Peters' statements in his divorce proceedings; (3) granting appellees' renewed motion for judgment as a matter of law and denying ONEOK's motion; (4) awarding money damages; (5) basing appellees' judgments "on improper advisory jury verdicts"; and (6) denying appellees' request for attorney fees.

### A.    Judicial Estoppel and Peters' Prior Statements

ONEOK claims the district court erred in excluding evidence of Peters' statements from his divorce proceedings from which ONEOK sought to prove judicial estoppel. We review the district court's evidentiary rulings for a "clear and prejudicial" abuse of its broad discretion. See Cummings v. Malone, 995 F.2d 817, 823 (8th Cir. 1993) (quoting United States v. Wright, 799 F.2d 423, 425 (8th Cir. 1986) (internal quotation marks omitted)). "We . . . review a district court's denial of judicial estoppel for abuse of discretion." Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co., 647 F.3d 780, 785 (8th Cir. 2011). In determining whether to apply judicial estoppel, courts typically consider the following factors:

> (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Gray v. City of Valley Park, Mo., 567 F.3d 976, 981 (8th Cir. 2009).

ONEOK argues Peters is judicially estopped from claiming an interest in the agreements because Peters stated in his divorce deposition he (1) would not be paid

-9-

under the ONEOK agreements, which he said "terminated" when he left ONEOK; and (2) had no "legal or beneficial interest" in any agreements other than those that had been discussed earlier in the deposition. By saying he would not be paid under the ONEOK agreements, Peters was relating the fact ONEOK had refused his request for a pro rata payment under the agreements. Peters did not disclaim any "legal or beneficial interest" in the agreements in his divorce deposition. He disclaimed an interest in plans *other than* those he had already discussed in his deposition, and the ONEOK plans and agreements had been discussed. The district court did not abuse its discretion in finding Peters' position in his divorce case was not clearly inconsistent with his position in this case.

ONEOK has moved to expand the record to include Peters' statement from his affirmative defense in his divorce proceedings "that, during the divorce proceeding, he did not have a present interest in and entitlement to the corporate stock under the [agreements]." ONEOK incorrectly claims this statement shows Peters disclaimed any interest in the agreements. Peters' statement that he did not have a present interest in ONEOK stock under the agreements at the time of his divorce proceedings is consistent with his position in this suit. "Present interest" is a term of art within the context of divorce law—it does not include mere expectancies. Cf. Johnson v. Johnson, 307 N.W.2d 783, 787 (Neb. 1981) (holding "the speculative nature of the expected return on" prepaid farm planting expenditures prevented those expenditures from being an asset divisible on divorce); 27B C.J.S. Divorce § 852 (2005) ("In order to be 'property' divisible on divorce or dissolution of marriage, the interest asserted to be property must be in the nature of a present property interest, rather than a mere expectancy interest."). At the time of Peters' divorce, ONEOK had denied Peters' claims under the agreements. At that moment, Peters had only a speculative—not a present—interest in the agreements.

Any error in this case was harmless because, even if admitted, the excluded evidence would not have made the denial of judicial estoppel an abuse of discretion,

nor was the evidence relevant to any other material issue. See Fed. R. Evid. 401. And we deny ONEOK's motion to enlarge the record because the offered pleadings from Peters' divorce proceedings do not provide any additional support for ONEOK's arguments, and no injustice is done by their omission. See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993) (recognizing we normally cannot consider evidence that was not in the record below, though we may do so "[w]hen the interests of justice demand it").

### B. Judgment as a Matter of Law

We review the district court's grant or denial of a motion for judgment as a matter of law de novo using the same standard as the district court. . . . We view the record in the light most favorable to [the nonmoving party] and give it the benefit of all reasonable inferences. Judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support a verdict.

Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 892 (8th Cir. 2005) (internal citations omitted). We review the district court's interpretation of the plans and agreements de novo. See Weitz Co. v. MacKenzie House, LLC, 665 F.3d 970, 975 (8th Cir. 2012).

### 1. Deferential Review

ONEOK contends we cannot disturb Roth's determinations "absent evidence of fraud, bad faith, or a gross mistake in judgment" because ONEOK had "full discretion and decision-making authority on all matters," citing Brozo v. Oracle Corp., 324 F.3d 661, 667-68 (8th Cir. 2003). Roth's decision is not entitled to deference because the agreements and plans grant discretionary authority only to the ECC, and the ECC neither decided appellees' claims nor delegated any authority to Roth.

Pursuant to the plans' respective choice of law provisions, the LTIP is governed by Delaware law and the ECP is governed by Oklahoma law.[3] Under Delaware law, "when a stock option committee is vested with final binding and conclusive authority to determine a participant's right to receive or retain benefits, that decision **made in accordance with the provisions of the agreement** will not be second guessed by the Court absent a showing of fraud or bad faith." W.R. Berkley Corp. v. Hall, No. Civ. A 03C-12-146WCC, 2005 WL 406348, at *4 (Del. Super. Ct. Feb. 16, 2005) (unpublished) (emphasis added); accord Schwartz v. Century Circuit, Inc., 163 A.2d 793, 796 (Del. Ch. 1960). There is no Oklahoma law on point, although Delaware's rule has been applied outside of Delaware. See, e.g., Noonan v. Staples, Inc., 556 F.3d 20, 33-34 (1st Cir. 2009) (predicting Massachusetts law); Brozo, 324 F.3d at 667 (applying Minnesota law); Mauldin v. Worldcom, Inc., 263 F.3d 1205, 1212 (10th Cir. 2001) (interpreting Texas law).

In order for Roth's decisions to be entitled to deference, ONEOK must show it complied with the decision-making processes in the governing documents. See W.R. Berkley Corp., 2005 WL 406348, at *4; cf. Mauldin, 263 F.3d at 1212. ONEOK maintains the plans and agreements reserved discretionary decision-making authority to ONEOK and its Board as a whole, who then delegated the authority to Roth, as the BPC's fiduciary.

The plans and agreements give discretionary authority to administer the plans to the ECC—not to ONEOK or its Board as a whole. The BPC is not the ECC. The ECC must be comprised of two or more non-employee directors, presumptively "outside directors." None of the BPC members are directors, except ONEOK's Chief Executive Officer, who was the BPC Chair. All BPC members are ONEOK employees. It is undisputed the ECC did not specifically authorize or approve Roth's denial of appellees' claims. Therefore, whether we must defer to Roth's decisions

---

[3]It is unclear which law the district court applied.

depends on whether the ECC delegated its decision-making authority to Roth. It did not.

### a.     Actual Authority

ONEOK claims Roth had actual authority to determine whether appellees "retired" or were "involuntarily terminated." "Actual authority is that authority which a principal expressly or implicitly grants to an agent." Billops v. Magness Constr. Co., 391 A.2d 196, 197 (Del. 1978); accord Curtis v. CIA Mach., Inc., 571 P.2d 862, 865 (Okla. Civ. App. 1977) (citing Farmers Nat'l Grain Corp. v. Young, 102 P.2d 180, 185 (Okla. 1940)). Whether express or implied, actual authority requires action by the principal. See Billops, 391 A.2d at 197; Farmers Nat'l Grain Corp., 102 P.2d at 185.

### i.    Express Authority

ONEOK first argues Roth had express authority because, as Senior Vice President of Administrative Services, he oversaw employee benefits and compensation matters. This alone does not give Roth actual authority because there is no evidence the ECC was involved in appointing Roth to this position or delegated any of the ECC's authority to Roth in conjunction with it.

ONEOK next maintains Roth had express authority because the Board appointed him as fiduciary to the BPC and authorized him to administer the agreements. ONEOK points to Trial Exhibits 102 and 142-145, as evidence of such authority. Trial Exhibit 102 lists ONEOK's Benefit Plan Administrative Committees and identifies Roth as the BPC's Authorized Representative and Fiduciary. Trial Exhibit 102 does not give Roth any express authority because (1) it does not purport to be issued by the ECC; and (2) ONEOK cannot give the BPC decision-making authority without amending the plans—for example, the BPC's members all are employees, only one is a director, and none are "outside directors," as the plans require.

ONEOK contends the Board amended the plans by allowing the ECC initially to award participation in the plans and the BPC, with Roth as its Authorized Representative and Fiduciary, actually to administer the plans. If we were to accept ONEOK's argument, every failure to comply with the plans' decision-making procedures would amend those procedures, and every denial of benefits would be entitled to judicial deference. Such a holding would render meaningless the rule that a denial of benefits only is entitled to judicial deference if the denial complied with the governing documents' decision-making procedures. Cf. W.R. Berkley Corp., 2005 WL 406348, at *4; Mauldin, 263 F.3d at 1212. Assuming ONEOK's failure to cite supporting legal authority does not result in a waiver of this argument, see generally Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1212 (8th Cir. 1993) ("By their failure to . . . provide citations to authorities that would lead us to resolve any questions, plaintiffs have waived the right to have us consider whether each ruling was correct."), we nonetheless reject the argument as contrary to Delaware and Oklahoma law. The district court did not err.

ONEOK next asserts Trial Exhibits 142-145 show Roth had express authority. Trial Exhibits 142-145 are Board minutes and resolutions authorizing the BPC to administer ONEOK's employee benefit plans, "except as to those functions and powers reserved to the Company, the Board of Directors, or officers of the Company by the plan." The district court excluded Trial Exhibits 142-145 because the court found the records were included in the appellees' request for production and ONEOK did not produce them.

"We review a district court's discovery ruling for abuse of discretion." Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004). We do not address whether the district court abused its discretion in excluding Trial Exhibits 142-145 because any error was harmless. Trial Exhibits 142-145 were largely cumulative of evidence the district court admitted, including Trial Exhibit 102 and the testimony by Roth that the

Board appointed him Authorized Representative and Fiduciary to the BPC. <u>See</u> Fed. R. Evid. 403.

### ii.     Implied Authority

Authority can be implied from the principal's words and conduct. <u>See</u>, <u>e.g.</u>, <u>Mechell v. Palmer</u>, 343 A.2d 620, 621 (Del. 1975); <u>Bank of Okla., N.A. v. Briscoe</u>, 911 P.2d 311, 317 (Okla. Civ. App. 1995); <u>see</u> <u>also</u> <u>Restatement (Third) of Agency</u> (<u>Restatement</u>) § 2.01 (2006). ONEOK contends Roth had implied authority to decide whether appellees retired or were involuntarily terminated because "ONEOK, and its senior executives, relied on Roth to administer the Agreements and Plans" and to decide claims. Under the plans' structures, the ECC, not ONEOK or its senior executives, is the principal authority to interpret the plans and agreements. The record fails to show any action or consideration by the ECC and its non-employee directors from which any trier of fact could infer such delegation. In short, there is no evidence the ECC, as the designated administrator for the agreements, implicitly delegated any authority to Roth.

### c.     Apparent Authority

ONEOK also asserts Roth had apparent authority. ONEOK misconstrues the nature of apparent authority. A principal cannot use apparent authority to substitute for its own agent's lack of actual authority. Apparent authority equitably estops a principal from denying liability only when the principal's actions reasonably and detrimentally cause a third party to believe the apparent agent was an actual agent. <u>See</u> <u>generally</u> <u>In re Mulco Prods., Inc.</u>, 123 A.2d 95, 103-04 (Del. Super. Ct. 1956) ("[W]hen an agent of a corporation possesses [apparent] authority, the corporation is bound by the act of the agent within the scope of his apparent authority as to any person who believes and has reasonable ground to believe that the agent has such authority and in good faith deals with him."); <u>McIntosh v. Vector Props., Inc.</u>, 889 P.2d 911, 913 (Okla. Civ. App. 1995) (noting establishing apparent authority requires showing acts by the principal that reasonably cause a third party to believe the agent

-15-

had authority to act on the principal's behalf and detrimental reliance by the third party); see also Restatement § 2.03 (stating apparent authority exists "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations"). ONEOK cannot shield itself from liability by asserting apparent authority for its own purported agent who did not have actual authority.

### 2. Retirement

The district court properly concluded, as a matter of law, appellees retired within the meaning of the plans.[4] We must interpret the meaning of the term "retirement" because the agreements, plans, and prospectuses do not define it. If a word in a contract is ambiguous, that is, reasonably having more than one meaning, the word is construed against the drafter, here ONEOK. See Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1160 (Del. 2010); McMinn v. City of Okla. City, 952 P.2d 517, 522 (Okla. 1997).

"Retirement" can mean either ceasing all work or simply "withdrawing permanently from one's usual sphere of activity." Oxford English Dictionary Online (December 2011), http://oed.com/view/Entry/164330 (January 27, 2012); see *Black's Law Dictionary* 1342 (9th ed. 2009) (defining "retirement" as "[v]oluntary termination of one's own employment or career, esp. upon reaching a certain age."). ONEOK's separate retirement plan, to which Roth referred when denying appellees' claims, demonstrates retirement from all work can occur at different ages by including three different retirement ages. The record reflects ONEOK paid some of the TransCanada hires pro rata benefits under the same stock option plans at issue here, even though those employees had not reached the age of fifty. This confirms ONEOK

---

[4]Therefore, we need not discuss whether the district court correctly found appellees were involuntarily terminated.

interpreted "retirement" inconsistently with ONEOK's separate retirement plan, upon which Roth relied.

ONEOK responds that appellees are bound by ONEOK's interpretation of retirement because they knew of it. Appellees are only bound by ONEOK's interpretation if they knew or had reason to know of that interpretation when they entered into the agreements. See Cephalon, Inc. v. Johns Hopkins Univ., Civ. Action No. 3505-VCP, 2009 WL 4896227, at *14 (Del. Ch. Dec. 18, 2009) (unpublished) (quoting Restatement (Second) of Contracts § 201(2)(b) (1981)); cf. Skycam, Inc. v. Bennett, No. 09-CV-294-GKF-FHM, 2011 WL 3293015, at * 7 (N.D. Okla. Aug. 1, 2011) (unpublished) (applying Oklahoma law and quoting Restatement (Second) of Contracts § 201(1) with approval). All of the instances ONEOK cites of appellees admitting they knew they had to be at least fifty to receive pro rata payments involve knowledge appellees acquired after entering into the agreements.

Finally, ONEOK argues appellees' interpretation is unreasonable, but does not explain why. Schaffart was forty-seven when she left ONEOK; Peters was forty-nine. There is nothing inherently unreasonable about retiring—withdrawing permanently from their usual sphere of activity with ONEOK—at those ages. Interpreting the plans and agreements against their drafter, ONEOK, we adopt this interpretation. See Osborn ex rel. Osborn, 991 A.2d at 1160; McMinn, 952 P.2d at 522.

### C.    Money Damages

ONEOK contends the district court erred in awarding appellees money damages, and instead should have remanded the benefits decision to the ECC. See Matthews v. Swift & Co., 465 F.2d 814, 821 (5th Cir. 1972) (applying New York law and remanding the case to the district court to "find either that a decision actually reached by the Pension Board was arbitrary, fraudulent or in bad faith, or, if the Pension Board had made no decision, that it could not fairly and in good faith decide against [the plaintiff] upon the evidence presented before the court"). ONEOK could

have triggered deferential review by following the terms of the agreements and allowing the ECC to determine appellees' claims for pro rata payments. When ONEOK allowed Roth to make the decisions, ONEOK exposed itself to de novo judicial review in a contract action between the parties. See Mauldin, 263 F.3d at 1214-15 (refusing to defer to the defendant company's denial of benefits and remanding to the district court for de novo review of whether the plaintiff was entitled to benefits because the company had not followed the contractually mandated procedure).

ONEOK, drawing a parallel, proposes that where an ERISA plan requires a committee to decide a claim, the remedy is to remand the claim to that committee. See Shelton v. ContiGroup Cos., 285 F.3d 640, 644 (8th Cir. 2002). This comparison is inapt. Enforcement of an ERISA plan, which is governed by a complex statutory remedial scheme, does not apply here, see generally ERISA § 502, 29 U.S.C. § 1132 (describing civil enforcement under ERISA), and is not an appropriate analogy.

### D. Advisory Jury

ONEOK alleges the district court erred in (1) trying the case to "a jury, even in an advisory capacity," because there were no factual issues; (2) "refusing to instruct on controlling law"; and (3) instructing the jury to disregard appellees' burden of proof in the supplemental jury instructions. "In an action not triable of right by a jury, the court, on motion or on its own . . . may try **any** issue with an advisory jury." Fed. R. Civ. P. 39(c)(1) (emphasis added).[5] We review the district

---

[5]Though the procedural posture of the trial below is foggy—the district court did not make separate findings of fact and conclusions of law, as Federal Rule of Civil Procedure 52(a) requires following a bench trial—on appeal, the parties treat the jury as advisory, and neither party asserts the case was "triable of right by a jury," Fed. R. Civ. P. 39(c). As a consequence, we also view the jury as advisory and do not address whether the district court erred in making the jury merely advisory. See United States v. Ghane, 673 F.3d 771, 775 n.2 (8th Cir. 2012) ("Generally, we will consider an issue not raised or briefed in this court waived." (quoting Bechtold v.

-18-

court's decision to try the case to an advisory jury for abuse of discretion. See Amtrust, Inc. v. Larson, 388 F.3d 594, 598 (8th Cir. 2004). The district court did not abuse its discretion because, as ONEOK concedes, there were no issues of material fact. Furthermore, ONEOK's allegations of error regarding the instructions to the advisory jury are not reviewable on appeal because the district court is free "to accept or reject the advisory verdict." Chi. & N.W. Ry. Co. v. Minn. Transfer Ry. Co., 371 F.2d 129, 130 (8th Cir. 1967).

### E.    Attorney Fees

In this diversity case, we apply the choice of law rules of Nebraska, the forum state. See Ferrell v. West Bend Mut. Ins. Co., 393 F.3d 786, 796 (8th Cir. 2005). Under Nebraska law, attorney fees are procedural and therefore governed by the law of the forum state. Neb. Nutrients, Inc. v. Shepherd, 626 N.W.2d 472, 518 (Neb. 2001); see also City of Carter Lake v. Aetna Cas. and Sur. Co., 604 F.2d 1052, 1062 (8th Cir. 1979) (applying Nebraska law and granting attorney fees to a contract governed by Iowa law because attorney fees are procedural). We review de novo the district court's denial of attorney fees under the NWPCA.[6] See Eikmeier, 783 N.W.2d at 797.

Because appellees left ONEOK in 2006 and 2007, we look at Neb. Rev. Stat. §§ 48-1229(4) and 48-1231 before their respective 2007 and 2010 amendments.[7]

---

City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997))).

[6]ONEOK cites Schinnerer v. Neb. Diamond Sales Co., 769 N.W.2d 350, 357 (Neb. 2009), for the proposition that we should review the denial of fees for abuse of discretion. Schinnerer is inapposite because Schinnerer involved a claim the state district court had awarded an excessive amount of fees, and did not challenge the propriety of awarding attorney fees in the first instance. See id. at 356-57; see also Eikmeier v. City of Omaha, 783 N.W.2d 795, 797 (Neb. 2010).

[7]The amendments did not affect the text relevant here.

Under § 48-1231, a plaintiff who succeeded on a claim for unpaid wages was entitled to recover attorney fees of at least 25% of the unpaid wages. Section 48-1229(4) defined wages, in pertinent part, as follows:

> compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis.

Awards under long-term incentive plans are compensation under the NWPCA. See Brockley v. Lozier Corp., 488 N.W.2d 556, 567 (Neb. 1992). Severance benefits are not. See Eikmeier, 783 N.W.2d at 799.

The district court determined appellees were not entitled to attorney fees under the NWPCA because the pro rata distributions were not wages. The district court held the payments could not be wages because they were not "made in the course of performing labor or services for [ONEOK]" and were based upon how appellees ended their employment. The district court reached this conclusion after determining appellees forfeited their rights under the agreements.

One stated purpose of the ONEOK plans was to compensate ONEOK's key executives, declaring, "The purposes of this Plan are . . . to provide competitive incentives that will enable the Company to attract, retain, motivate, and reward eligible [or Key] Employees." The plans expressly were compensation and benefits provided to attract new employees, retain current employees, and motivate and reward high performers.

The pro rata payments also are distinguishable from severance benefits because the payments are based on the number of months appellees worked for ONEOK—not on ceasing to work. Payments triggered by retirement or involuntary separation are exceptions to forfeiture under the agreements. These benefits arose under

-20-

performance and stock incentive agreements, and are not severance benefits. The district court erred in denying attorney fees.

## III. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion. We affirm the district court's denial of judicial estoppel, its decision to exclude evidence of Peters' statements in his divorce proceedings and Trial Exhibits 142-145, its decision to empanel an advisory jury, its judgments against ONEOK and in favor of appellees, and its award of money damages. We reverse the district court's denial of attorney fees, and remand for the district court to determine the amount of the attorney fees award under the NWPCA, including attorney fees for this appeal.

—————————————————